ARMSTEAD T. ARNOLD ET UX. v. R. MACDONALD.

Decided January 17, 1900.

1. **Usury—Interest Applied to Principal.**

Payments of interest, in usurious contracts, are applied by the law to the principal.

2. **Homestead—Release Back to Vendor—Fraud on Wife—Usury.**

Where land was purchased on time for a price of $750, but notes bearing 10 per cent interest, were given for $1012.50, and at the end of several years, when an amount about equal to the true principal had been paid, the purchaser executed new notes for $1005, and agreed to become a tenant on failure to pay them at maturity and to vacate the premises, such agreement and relinquishment of title because the land was the purchaser's homestead, and the purchase money was practically paid at the time, and because made without the consent of the wife, was ineffectual as a fraud upon her homestead rights.

3. **Same—Rental Applied to Purchase Price.**

Where a renunciation of title back to the vendor is held ineffectual because in fraud of the homestead rights of the wife, amounts thereafter paid as rental by the purchaser under a usurious contract will be applied to the principal of the purchase money.

4. **Practice—Waiver—Verification of Plea of Usury.**

The want of verification to a plea of usury is waived by an agreement which waives "the irregularities and informalities appearing in the pleadings in this cause."

APPEAL from Washington. Tried below before Hon. ED. R. SINKS.

W. H. Billingslea, for appellants.

Buchanan & Henderson, for appellee.

JAMES, CHIEF JUSTICE.—This is a suit by appellee to recover forty-nine acres of land from appellants. The testimony of plaintiff, in connection with undisputed instruments, gives us the following facts:

In 1875, he, acting as agent and attorney in fact for his mother, Mrs. M. Macdonald, gave the defendant, A. T. Arnold, a lease of fifty acres of land for three years, and at the end of the said period gave it to him for another three years, Arnold to improve the land and have use of it during said time, and at the end of the time, to have the option to purchase it for $15 per acre. On September 15, 1881, he, for his mother, gave Arnold a bond for title for the land, taking his two notes as the purchase price thereof for $506.25, each due respectively January 1, 1882, and January 1, 1883, bearing 10 per cent interest per annum from their date. Shortly after this transaction one acre of the land was sold by consent of the parties for church purposes for $75, which was received by the vendor and credited on the said notes, leaving the forty-nine acres herein sued for. Plaintiff has obtained his mother's interest in the land. He testified that in 1881 the lease expired and defendant bought the land at $750, being $15 an acre, on time. He does not undertake any explanation of why the contract and notes were taken for the sum of $1112.50 instead of the contract price of $750. We do not think it necessary for the purposes of this case to consider the explanation given by Arnold, to wit, that he did not know the notes were drawn for more than $750.

Plaintiff testified further that in 1888, the notes being unpaid, he sent for Arnold, who came to the house of F. G. Roberts, plantiff's uncle, and they calculated the amount of interest and principal and added together all the payments defendant had made and deducted the amount of credits and payments from the amount of notes, principal and interest, which left defendant owing him on the unpaid purchase money notes the sum of $1005, and this amount was divided into three notes of equal amount, and drew up another agreement by which defendant had three years within which to pay for the land. The notes were dated September 28, 1888, payable on the 1st days of October, 1889, 1890, and 1891, and bore 10 per cent interest per annum from date, and each contained the following provision: "If I should fail to pay either of said notes, with interest, at maturity, then and in that case I cease to be a purchaser and become a tenant on said land, and thereby agree to pay Mrs. M. Macdonald or order the sum of one hundred dollars per annum as rent for said land as long as she or her agent allows me to live on said land, which said land I hereby agree to vacate at the request of Mrs. Macdonald or her agent if I fail to pay either note and interest when due."

Plaintiff also testified that Arnold failed to pay any of said notes, and became a tenant in 1890, and regularly thereafter paid $100 annually as rent, except the year his house burned down, when he paid only $25.

This action was brought on February, 15, 1899, against Arnold and his wife in trespass to try title, and judgment was given for the plaintiff. The testimony shows clearly that the property was the homestead of Arnold and his wife, subject to the vendor's rights.

The theory upon which such judgment was given was that Arnold owed the purchase money for the land, when, in 1888, he made the arrangement by which he agreed to surrender the land, if he failed to pay any of the notes then given. If he actually owed the purchase money at the time, we believe his act in renouncing title in settlement of his debt would have been allowable under a number of decisions. Roy v. Clarke, 75 Texas, 28; Oury v. Saunders, 77 Texas, 281.

But according to the view of the transaction of 1881 as related by the plaintiff himself, it was usurious. The sale of the land was for the agreed price of $750, on time, and the written contract as entered into was for $1012.50, and this made to bear interest at 10 per cent per annum from date of sale. At that time 12 per cent per annum was allowed to be charged, but the interest contracted to be paid was in excess of 12 per cent on the real price of the land.

If the amount still due on the notes on September 28, 1888, after deducting credits, was $1005, and that balance arrived at as plantiff says by computing the principal and interest and deducting payments, the defendant must have paid almost the sum of $750. If we take plaintiff's testimony as meaning that the $75 which the one acre of land sold for a few days after the contract of 1881 was a part of what was deducted from the gross amount of the notes and interest, or if we consider that the $75 was applied to the principal at the time, thus reducing the principal to $675, we still have the result that the payments of interest were almost equal to the real principal. The rule is that payments of interest, in usurious contracts, are applied by law to the principal.

In view of the decisions above cited on the power of the husband to surrender a homestead to the vendor in settlement of purchase money, it can not be held that the transaction between Arnold and plaintiff, when practically all of the purchase money notes had in fact been satisfied, can be upheld as a transaction in good faith with respect to the wife of Arnold. On the contrary the agreement, voluntary or otherwise on the part of the husband, to renounce title under such circumstances, and to assume the relation of tenant, in default of payment of large sums of money not really unpaid purchase money, was upon its face a fraud on the homestead right, and in our opinion the failure to pay such notes, and the assumption by Arnold of the attitude of a tenant, will not be recognized as having any effect upon the title. This being so, and the usury in the first notes being carried into the second notes, the payments subsequently made by Arnold, even if regarded as rent payments, should be applied in satisfaction of the real principal of the purchase money. We conclude, therefore, that the purchase money of the land has been fully paid, and judgment will be here rendered for appellants for the land. Fisher v. Hoover, 3 Texas Civ. App., 81.

There was an unsworn plea filed setting up payment of the debt by force of the usurious nature of the written agreements. As a plea of payment it did not require to be sworn to, but the statute requires usury to be specially pleaded and verified by affidavit. There is incorporated in the statement of facts an agreement as follows: "The irregularities and informalities appearing in the pleadings in this cause, by agreement of parties and consent of the court, were waived, and the matters appearing in same were submitted to the court for judgment upon the several issues sought by the parties, and to be passed on by the court in its conclusions on the law of the case." This we take to be a formal waiver of defects in the pleadings.

*Reversed and rendered.*

Writ of error refused.