GLADWIN STATE BANK *v.* DOW.

1. CONTRACTS—ORAL AGREEMENT—BILLS AND NOTES—EVIDENCE—ADMISSIBILITY.

In an action on a promissory note, which was originally given for 90 days and which had been renewed 47 times, defendant's contention that he had an oral understanding that the loan should be a long-time loan, *held,* untenable, since at the expiration of the 90 days defendant could have paid the note and plaintiff was not bound to renew it.

2. USURY—SET-OFF AND COUNTERCLAIM—PAYMENT—STATUTES.

Where an amount in excess of seven per cent. had been deducted each time a note was renewed, plaintiff's contention that the defense of usury was by way of set-off and that a counterclaim may not be allowed where an independent suit is not maintainable, is without merit, since the defense of usury is *perforce* of the statute (2 Comp. Laws 1915, §§ 5998, 5999), goes to the consideration of the note sued upon, and is more in the nature of payment than of set-off.

3. SAME—DISCOUNT—INTEREST PAID IN ADVANCE.

Since the usury statute covers interest "reserved, taken, or received," it is unimportant that the usurious interest was paid in advance and was called "discount."

4. SAME—RENEWAL NOTE—AVAILABILITY OF DEFENSE OF USURY.

Where a renewal note is given containing and providing for usurious interest, or where usurious interest is exacted, the defense of usury not only in the particular note sued upon but in all of its predecessors where it exists, if it exists at all, is available to the maker as a defense, and as between the parties to the transaction, or holders with knowledge, all payments of usurious interest made on the series of notes will be applied by the law to the extinguishment of the debt, and this, even though the parties have treated such payments as interest.

5. SAME—APPEAL AND ERROR—ISSUES PRESENTED.

For the reason that the *bona fides* of plaintiff or its immediate predecessor was not presented on the record, and be-

cause the case is in this court upon writ of error and not case-made, this court will decline to follow defendant's suggestion that judgment be entered here for the amount tendered, viz., the amount of the note less interest paid.

Error to Gladwin; Sharpe (Nelson), J. Submitted October 7, 1920. (Docket No. 40.) Decided December 21, 1920.

Assumpsit by the Gladwin State Bank against Herbert L. Dow on a promissory note. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

*Kinnane, Black & Leibrand,* for appellant.

*Campbell & Foster,* for appellee.

In February, 1906, defendant applied to the private banking firm of M. C. Scrafford & Company of Gladwin for a loan of $300. He claims to have informed Mr. Scrafford that he would want to keep the loan for some time, that Mr. Scrafford told him that under the practice of his bank he would make the loan for 3 months, but would renew the paper from time to time unless he might need to call it in. A 90-day note was given for the $300, with interest at 7 per cent. after maturity, and defendant paid $6 as interest or discount. This note was renewed some 47 times and at each renewal the $6 discount or interest was paid in advance. This action is brought on the last of these renewal notes, and the defense of usury was interposed. Two hundred eighty-eight dollars had been paid as discount or interest, and defendant insisted in the trial court that this being at the rate of 8 per cent. and in excess of the statutory rate (2 Comp. Laws 1915, § 5997) plaintiff bank which had succeeded the private banking firm, as claimed by defendant with notice of the transaction, could not recover the face of

the last note, but could only recover the amount of the original loan less the usurious interest paid thereon. The trial court declined to follow this contention but deducted from the last note the $6 paid when it was executed and directed a verdict for $294.

FELLOWS, J. (*after stating the facts*). We may lay aside the contention of the defendant that the facts surrounding the original transaction showed an agreement for a long-time loan to be renewed at frequent intervals. There was no definite agreement for any loan beyond the period of 90 days fixed in the first note. At the expiration of that time defendant could have paid the note, plaintiff was not bound to renew it. Likewise we may lay aside the argument of plaintiff's counsel, most ingeniously urged, that the defense of usury here relied upon is by way of set-off; that one who pays usurious interest may not sue to recover it; and that, as here presented, it amounts to a counterclaim which upon principle may not be allowed where an independent suit is not maintainable for its recovery. The defense of usury is *perforce* of the statute (2 Comp. Laws 1915, §§ 5998, 5999) and here goes to the consideration of the note sued upon. As here urged the defense is more in the nature of payment than of set-off. It should also be stated that we do not regard as important the fact that the usurious interest was paid in advance and was called "discount." Whether it was paid at the beginning or the end of the 90 days is of no moment here. In the recent case of *Umphrey* v. *Auyer*, 208 Mich. 276, we pointed out that the usury statute covered interest "reserved, taken, or received."

Thus stripped, the case presents the naked legal proposition of whether the maker of a series of notes upon which usurious interest has been collected may, when sued upon the last renewal note, interpose the

defense of usury, and thus raise the question of the legal consideration of the note in suit. In other words, as between the immediate parties to the transaction may the maker, when sued upon the last of a series of renewal notes upon all of which usurious interest has been collected, have applied as payment the amount paid as interest?

Authorities upon the question are not wanting and to them we shall now address our attention, reserving consideration of our own until the last. The rule is thus broadly stated in 39 Cyc. p. 1003:

"In accordance with the general principle above stated the renewal of a usurious contract is itself usurious, being merely a new form of the same obligation. Likewise the substitution of a different kind of security or one executed by other parties for the original usurious instrument does not expunge the usury so long as the taint remains in the consideration. The fact that the security in question is the last of a long series of successive renewals does not change its character. The original usury descends with the original consideration along the whole line and the last is no better than the first."

The supreme court of Iowa early had this question under consideration. In the case of *Campbell* v. *McHarg*, 9 Iowa, 354, that court, speaking through Justice Woodward, said:

"When the attention of the court is called to the question of usury, to say that the inquiry is limited to the identical contract (or note) before them, and that they cannot look back into a preceding note, or notes, for which the present one was substituted, is contrary to both the letter and the spirit of all, or nearly all, the adjudications. These teach that, however it may be covered by changes and substitutions, if usury be found to exist, either directly or indirectly, its taint continues and affects all the parts through which it runs. The substitution of one contract for another, the taking a new note for an old one, will not purge it."

The supreme court of Alabama in *Masterson* v. *Grubbs*, 70 Ala. 406, says:

"While these principles illustrate the general policy of our laws regulating the subject of usury, it is well settled, both in this State and elsewhere, that the mere renewal of a note or other security, between the same parties, does not purge the original transaction of the taint of usury."

In *Pickett* v. *National Bank*, 32 Ark. 346, it was said by the court:

"The usurious interest in this instance, having been carried into the general account, and made part of the sum found due upon final settlement, taints the whole contract with usury, the fact that the account was closed by note amounts to nothing; it matters not whether usury was charged and taken by any tacit assent of the firm by the bank in stating the monthly account, or by note substituted for the one first given; the question is not how the contract was closed, or renewed, but whether any part of the sum charged, and for which the note was executed, was for the use or forbearance of money at a greater rate of interest than allowed by law to be taken. Such is clearly the rule as laid down by the elementary writers, and accords with numerous decisions, to some of which we will refer."

In the early case of *Reed* v. *Smith*, 9 Cow. (N. Y.) 647, it was said:

"The note upon which this suit is brought, is most clearly a continuation of the original note, given in April, 1816, when the loan was obtained by Parker. If that note, therefore, was given upon a usurious consideration, the taint which it imbibed attached to each of the series of securities which were subsequently taken, and affects and destroys the one in question."

In the case of *Quinn* v. *National Bank*, 8 Ga. App. 235 (68 S. E. 1010), it was held (we quote from the syllabus) :

"Any payments made upon an usurious debt, even

though the suit be upon notes given in renewal thereof (but without purging out the usury), are to be deducted from the principal debt and the lawful interest."

We likewise quote from the syllabus of the case of *First National Bank* v. *McCarthy*, 18 S. D. 218 (100 N. W. 14), where the supreme court of that State had the question under consideration:

"A note executed as a renewal of a note providing for usurious interest is itself tainted with usury."

In *Taylor* v. *Morris*, 22 N. J. Eq. 606, the question was considered by the court and it was said:

"It is well settled that the mere substitution of one security for another security which is usurious, will not remove the original taint. An exception to this rule exists in favor of a *bona fide* holder of an usurious security who receives from the maker a new security without any knowledge of the usury. In his hands the new security may be enforced (citing authorities).

"If the immediate parties to the transaction repent, and by mutual consent the usurious security be surrendered, a new promise to pay the sum loaned with legal interest may then be enforced, on the principle that the parties have purged the transaction of its original vice (citing authorities).

"But as between the parties to the usurious instrument, or as against a subsequent holder with knowledge of the defect, the original taint attaches to all substituted obligations or securities, however remote, unless the original vice be removed by expunging the usurious element (citing authorities). No recovery can be had upon any succeeding obligation which operates to secure the usurious exaction. A new settlement of the accounts between the borrower and lender, and the cancellation of the original security, or the introduction of a new consideration in the shape of an additional loan, will not operate to give such an instrument validity."

In *Gibson* v. *Stearns*, 3 N. H. 185, it was remarked by the court:

"The better opinion is, that a mere substitution of another security for the one tainted with usury, between the parties to the corrupt agreement, does not take a case out of the statute."

We quote from the syllabus of *Brown* v. *National Bank,* 169 U. S. 416 (18 Sup. Ct. 390) :

"The forfeiture declared by the statute is not waived by giving a renewal note, in which is included the usurious interest. No matter how many renewals may be made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied on, and the matter is brought to the attention of the court, lose the entire interest which the note carries or which has been agreed to be paid."

In *Flemming* v. *Mulligan,* 2 McCord, 173 (13 Am. Dec. 707), it was said by the South Carolina court:

"The fact of this note's being a renewal for a part of the original contract, it being between two of the parties to the original contract, does not vary the case; for where a bond has been given upon a usurious contract or consideration, which is afterwards canceled, and a new bond given upon the same terms, it is clear that the substitution of the one security for another cannot avail the parties to the usury, because as the second bond was given in consideration of the first which was paid, it follows that the second must be void also."

The court of last resort of Mississippi in *Torrey* v. *Grant,* 10 Sm. & Mar. 89, held:

"As the original note was affected by usury, every renewal or change of security must be equally affected."

In *National Bank* v. *Lewis,* 75 N. Y. 516 (31 Am. Rep. 484), that court, following its former decisions, held (we quote from the syllabus) :

"Where the note in suit is the last of a series of renewed notes, the original loan being usurious, the

taint of usury affects the whole; the forfeiture of the entire interest follows and credit must be given for all the interest which has been paid from the beginning of the transaction."

It should be stated, as a matter of accuracy with reference to this case, that after the opinion was handed down the Supreme Court of the United States decided the case of *Barnet* v. *National Bank,* 98 U. S. 555, in which it was held that under the terms of the national banking act the recovery of twice the amount paid as unlawful interest could only be had in an independent suit for such penalty, and upon rehearing of the *Lewis Case* (*National Bank* v. *Lewis,* 81 N. Y. 15), such holding of the United States Supreme Court was recognized as controlling on that point. But this affected the remedy as to the penalty, not that portion of the case which we have above quoted which has reference to the effect to be given a renewal note. In the later case of *Sheldon* v. *Haxtun,* 91 N. Y. 124, that court again had before it the question as between private parties, and it was said by Chief Justice Andrews on this subject:

"The surrender of the old note and the extension of time was ample consideration for the new note, but the substituted security was tainted with the vice of the original transaction. We need not consider how the courts of Illinois would deal with the question if the suit had been brought in that State. The fact that the original loan was at a rate of interest lawful in that State, does not make the contract lawful here, nor does the fact that the new note was made in that State and prescribed a rate of interest lawful there, take it out of the operation of the well-settled doctrine that a new security for a usurious debt is affected by the usury in the original transaction."

And Mr. Justice Earl in the same case said:

"If this note for $1,000 had been given in this State, even with the lawful rate of interest mentioned therein, in renewal of or in substitution for the prior

usurious note, it would also have been tainted with usury and void. A substituted or renewal note thus given is held void for one or both of these reasons: The new note in such a case is given in renewal or continuance of the usurious contract, and is, therefore, void, for the same reason that condemns that contract; or it is a new security for a usurious debt or contract and void on that account."

The supreme court of Pennsylvania in *Overholt* v. *National Bank,* 82 Pa. St. 490, speaking through Mr. Justice Sharswood, said:

"A renewal note is not payment of the original debt, and a new debt or novation in view of the usury laws, however it may be, if the parties so intend, as to other questions. If it were held otherwise nothing would be so easy as to evade the statute. What the creditor is entitled to recover is the original loan with lawful interest, and the borrower is entitled to credit for all that he has paid beyond what by law he was bound to pay. It is clear then as to the national banks that whenever they charge or stipulate for an illegal rate all payment of interest and not merely the excess is illegal."

And while that court later recognized the holding of the United States Supreme Court as to the proper remedy for the enforcement of the penalty under the national banking law (see *First Nat. Bank of Clarion* v. *Gruber,* 91 Pa. St. 377), the rule announced by Justice Sharswood in the language above quoted as to the effect of a renewal note has not, so far as we have been able to ascertain, been in any way modified.

The textwriters lay down the same doctrine announced in the foregoing cases. Mr. Webb, in his work on Usury (§ 308), says:

"If a transaction is usurious in its inception, it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole

212—Mich.—34.

family of consecutive obligations and securities grow-ing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced.

"Every renewal of a note given for a usurious loan of money is subject to the defense of usury between the original parties and purchaser with notice; but a renewal in the hands of a *bona fide* purchaser for value, without notice, is valid."

And Mr. Tyler, in his work on Usury (p. 346), says:

"As a general proposition, it may be affirmed that the original taint of usury attaches to all consecutive obligations and securities growing out of the original vicious transaction; that is to say, it attaches to all re-newals of the original security whenever made or given; and it also vitiates every new security into which the original usurious consideration enters."

The following cases are in accord with those dis-cussed: *Johnson* v. *Grayson*, 230 Mo. 380 (130 S. W. 673); *Whinery* v. *Garrett*, 24 Ky. Law Rep. 1558 (71 S. W. 855); *Dean* v. *Maxfield* (Tex. Civ. App.), 209 S. W. 466; *Arnold* v. *Macdonald*, 22 Tex. Civ. App. 487 (55 S. W. 529); *Lewis* v. *Hickman*, 200 Ala. 672 (77 South. 46); *Compton* v. *Collins*, 190 Ala. 499 (67 South. 395); *Paine* v. *Levy*, 142 Ky. 619 (134 S. W. 1160); *Gilbert* v. *A. A. Clark & Co.* 186 Iowa 904, (173 N. W. 104); *Beals* v. *Lewis*, 43 Ohio St. 220 (1 N. E. 641); *New Hampshire Banking Co.* v. *Waller*, 5 Kan. App. 881 (47 Pac. 543); *New York Security & Trust Co.* v. *Davis*, 96 Md. 81 (53 Atl. 669).

The language of the court in *Cornell* v. *Smith*, 27 Minn. 132 (6 N. W. 460), was thought by the trial judge to sustain plaintiff's counsel and some of the language used does fortify their claim. If this was an action to recover usurious interest voluntarily paid that case would be applicable. But this court has held that voluntary payments of usurious interest may not be recovered under the usury statutes which have been

in force since section 5 of chapter 6, part 1, title 7, of the Revised Statutes of 1838 was amended and section 7 of the same chapter was repealed by Act No. 47 of the Laws of 1843, nor under the former statute except in the manner therein provided. But it is the rule of this court that the statute may be appealed to as a defense when the usurious obligation is sought to be enforced; and this is true even though a bill may not lie to restrain its enforcement (*Vandervelde* v. *Wilson*, 176 Mich. 185, 190). The rule is well recognized in this jurisdiction that one who voluntarily pays usurious interest may not maintain a suit to recover it while one against whom a usurious contract is sought to be enforced may avail himself of the statute as a defense. The statute is available as a shield but not as a sword.

One might infer from some of the language of the court in *Peterborough National Bank* v. *Childs*, 133 Mass. 248 (43 Am. Rep. 509), that that court entertained contrary views to those courts from whose decisions we have quoted. The cases cited by that court, however (*Rohan* v. *Hanson*, 11 Cush. [Mass.] 44; *Richardson* v. *Woodbury*, 12 Cush. [Mass.] 279; *Hubbell* v. *Flint*, 15 Gray [Mass.], 550), to sustain such language are not similar to the instant case, and the supreme court of Massachusetts finally disposed of the case before it upon the authority of *Barnet* v. *National Bank, supra.* In the earlier case of *Chadbourn* v. *Watts*, 10 Mass. 120 (6 Am. Dec. 100), that court had also held that where there had been two renewal notes neither of which bore usurious interest, the defense of usury in the first note was not available.

Let us now turn to our own cases. Some language will be found in our earlier decisions sustaining the contention of plaintiff's counsel. But we think a careful analysis of the earlier cases will demonstrate that in so far as the points actually decided by them

goes, our later cases, to some of which we shall refer, are not out of harmony with them. The point actually decided in *Thurston* v. *Prentiss,* Walk. Ch. 530, was that a surety who has paid the amount of a judgment against him and his principal upon which execution has been levied upon his property, may recover against the principal the amount so paid, and that the principal may not interpose against such an action the defense of usury. This case and *Farmers' & Mechanics' Bank* v. *Kimmel,* 1 Mich. 84, may be regarded as the forerunners of a line of decisions of this court in which it has uniformly been held that the defense of usury is a personal one. The *Thurston Case* was again before the court in *Thurston* v. *Prentiss,* 1 Mich. 193. The transaction out of which that litigation grew arose before the act of 1843, and it was there pointed out that under the statute in force when the cause of action accrued (Rev. Stat. 1838, p. 160) the maker of the note could pursue either of two courses, *i. e.,* he might when sued defend on the ground of usury in which case the plaintiff would forfeit threefold the amount of the usurious interest and defendant have his costs, or he might bring an independent action under the statute in debt and recover threefold the amount of the excess of interest paid, but that he might assert such claim in no other way. While our statute is not now the same as it then was, the principle of this case as we have already pointed out was reiterated in the late case of *Vandervelde* v. *Wilson,* *supra.* In the *Thurston Case* it will be seen the maker of the note was seeking to assert the defense of usury not against the payee but against his surety who had paid a judgment rendered on the note and was seeking to be reimbursed.

Language is used and authorities cited in support thereof in *Craig* v. *Butler,* 9 Mich. 21, which sustain plaintiff's counsel. But it will be noted that after

such discussion the court expressly reserved decision of the question now before us in the following language:

"It is unnecessary for us to decide how far these views should be followed where there is no change of parties, or how far a surety may claim exemption where the substituted paper does not cancel the original liability, but is a mere renewal of it."

The facts of that case were these: Notes had originally been given by Frost & Bradley to Butler, which were indorsed by the Craigs, which it is to be inferred contained usurious interest. In August, 1857, new notes in the sum of $2,540 were given by Frost & Bradley to Butler; they were likewise indorsed by the Craigs and contained no usurious interest; this was also true of another note of $50. Frost & Bradley assigned to the Craigs property then supposed sufficient to pay all debts upon which the Craigs were liable. Later the Craigs gave the notes in suit to Butler and upon them only lawful interest was reserved. It was held that the Craigs could not interpose the defense to this action that usurious interest had been paid by Frost & Bradley. This was but following the earlier holdings that the defense of usury is a personal one.

Plaintiff's counsel rely most strongly on the early case of *Smith* v. *Stoddard,* 10 Mich. 148 (81 Am. Dec. 778), and it is urged that language there used is controlling of the instant case. We quote such language as is thought applicable:

"The mortgage in suit is a new security, given with its accompanying note upon a complete settlement of all the former transactions. The sum of $500 embraced in it is money actually lent by complainant to defendant. It includes no direct usury, because the principal had never been reduced or intended to be reduced; all payments which had been made, having been expressly made upon interest. It appears that

the usurious interest was always either paid in money or put in the shape of separate due bills and amounts. We do not think, as to this sum of $500, that there can be any deduction allowed. When parties have actually paid the usurious interest, and then come to a *bona fide* settlement, and make new securities which include nothing but an actual loan, and are not meant as mere evasions, we do not think the new contract can be regarded as either usurious in itself, or based on a usurious consideration. The statute does not contemplate the recovery back, or allowance of unlawful interest once paid, unless in a suit upon the contract under which it was exacted. A new security, between the same parties, embracing not only a valid debt, but also a claim for *unpaid* usurious interest, would undoubtedly be founded to that extent on a usurious consideration, and therefore liable to abatement. But the abatement cannot, we think, under our statute, go further. The law does not absolutely avoid contracts for usury, and if parties completely perform them they are remediless."

It is unfortunate that the record in this early case is not available so that we might have before us the terms of the "complete settlement," the "*bona fide* settlement" which was not meant as a mere evasion of the usury laws. Courts have uniformly held that there may be such a settlement between the parties as purges the transaction of its usurious taint. What must be done to so purge the transaction is a matter upon which the authorities differ. One way of purging the contract of the usurious taint was pointed out in *Carr* v. *Taylor*, 62 N. Y. Supp. 849; there may be others. It is said in 39 Cyc. pp. 1002, 1004:

"The general principle determining when an indebtedness infected with usury is to be deemed disinfected may be stated as follows: If the tainted obligation is with the full knowledge and consent of the borrower, finally canceled or abandoned, and a new obligation, containing no part of the usury, is executed in legal form, and supported solely by the moral obligation resting upon the borrower to pay the

money actually received with legal interest thereon, such new obligation is valid and enforceable. But so long as the original usurious obligation continues to exist, based upon a consideration in which usury inheres, the taint of usury persists whatever be the form which the subsequent dealings of the parties may cause it to assume, and even though new parties may have been introduced, or the borrower allowed to assume a different relation to the security affected with usury.

"When a usurious obligation is settled and abandoned, and a new security taken for the debt lawfully due with lawful interest thereon, such new security rests upon a consideration purged of usury, and is valid. The fact that the lender by such settlement retains the usury already paid will not taint the new contract."

We need not determine in the instant case what is necessary to be done in order to purge the transaction of its usurious taint as each of the notes, including the one in suit, was infected with that taint. In this regard the instant case is clearly distinguishable from *Smith* v. *Stoddard, supra.* In that case there had been a complete, a *bona fide,* settlement and a new obligation given which bore only lawful interest.

When we examine these earlier cases, having in mind the actual case before the court and the actual question decided, we are constrained to the view that our later cases are not out of harmony with them. Mr. Justice CAMPBELL, who wrote the opinions in *Smith* v. *Stoddard, supra,* and *Craig* v. *Butler, supra,* also wrote the opinion in *Thorp* v. *Deming,* 78 Mich. 124. The record in that case is available, and is before us. It does not differ from the record in the instant case except that the facts there were in dispute. The defendant there had given his note which he claimed upon the trial contained usurious interest; this was followed by two renewal notes which he like-

wise claimed contained usurious interest. The suit was upon the last of these three notes. The question of usury was in dispute, but the trial judge had charged the jury that if they found usury, and found that the payments made on a previous note were sufficient to discharge it after deducting the usury, plaintiff could not recover. Error was assigned upon this and similar instructions. In this court plaintiff's counsel insisted, as is here insisted, that usury would not be considered which did not enter into the very contract sued upon. We quote from their brief:

"We contend that when the new obligation was given for the original indebtedness, with the interest and cost of making the papers added, the question of what was paid by the defendant for the purpose of getting an extension of time, on account of his being in straightened circumstances, or what was paid for the use of the money, becomes immaterial, as it does not enter into the contract in question."

And the cases we have just considered with others were cited to support such contention. This court declined to follow this contention and in a brief opinion affirmed the case.

*Gardner* v. *Matteson*, 38 Mich. 200, did not involve the precise question here under consideration, but it was similar in that it involved the giving of a series of renewal notes, each one of which, including the last one, was tainted with usury. It was there said by Mr. Justice MARSTON, speaking for the court:

"The defense of usury is a personal one, and may be waived, and so may the party voluntarily pay usurious interest, and where he does so he will not be permitted to recover it back. To this extent the statute undoubtedly goes, but it never was intended that by substituting new paper, with usury added, for the old paper as the same become due, the question of usury could not thereafter be raised, or that the creditors by taking a mortgage upon personal property to secure the payment of such usurious debt could by

taking possession of the property and proceeding to sell the same, thereby preclude the debtor, in an action of replevin to recover possession of the property from showing the entire transaction, upon the theory that the action was not one brought upon the usurious note. To give the statute such a construction would be but pointing out a method for the grasping and unconscionable creditor to evade our usury laws entirely."

In *Bateman* v. *Blake*, 81 Mich. 227, there had been paid monthly payments which were receipted for as consideration of the extension of time; they were usurious. This court held that it was of no moment that they were treated by the parties as interest, and notwithstanding the fact that they had been applied by the parties as interest, it was held that the law would apply them to the extinguishment of the debt. Mr. Justice CAHILL wrote for the court, saying:

"The trial judge rightly refused to treat the monthly payments as interest or compensation for extensions, or as anything else than payments on the principal debt. It was of no consequence what the parties called those payments. The law applies them, where they belong, to the extinguishing of the debt."

This case was cited with approval in *Fretz* v. *Murray*, 118 Mich. 302, where Mr. Justice LONG, speaking for the court, said:

"Under the North Carolina statute, the entire interest is forfeited in usurious contracts, and the courts apply all payments of interest, though made as such, upon the principal debt   *Moore* v. *Beaman*, 111 N. C. 328; *Gore* v. *Lewis*, 109 N. C. 539. In *Gill* v. *Rice*, 13 Wis. 553, the Supreme Court of Wisconsin held that, where no direction had been given by the debtor, the law would apply a payment upon a usurious contract to the extinguishment of the principal sum loaned. The same rule is adopted in *Stanley* v. *Westrop*, 16 Tex. 200. In *Bateman* v. *Blake*, 81 Mich. 227, this court applied the rule that on usurious contracts the payments, though made as interest, must be applied

upon the lawful debt, although the statute at that time avoided the excess of interest only."

In *Estey* v. *Building & Loan Ass'n*, 131 Mich. 502, Mr. Justice MONTGOMERY said:

"But, as the express reservation of 9 per cent. interest was illegal, it tainted the contract. What is the complainant's remedy? It is claimed that all payments made should be applied on principal, and that, on payment of the balance of the principal, the mortgage should be discharged. On the other hand, it is contended that money paid as interest cannot be recovered back. This question was discussed by Mr. Justice LONG in *Fretz* v. *Murray*, 118 Mich. 302. In that case it was held that, where payments were made upon a usurious contract without designation, they should be applied in extinguishment of the lawful debt—*i. e.*, the principal; but the court found it unnecessary to decide where payments made on the contract as interest should be applied in reduction of the principal. The case of *Fowler* v. *Trust Co.*, 141 U. S. 384 (12 Sup. Ct. 1), was cited, holding that the payments shall be so applied. We are satisfied with the reasoning of that case, and hold that, where it is sought to enforce a contract which was usurious at its inception, in so much as our statute provides that the court shall declare the interest void (section 4858), and that the debtor shall not be compelled to pay interest (section 4857), the recovery should be limited to the principal sum, less payments actually made, however designated at the time of payment. This is the only rule which effectuates the intent of the statute."

In the recent case of *Continental National Bank* v. *Fleming*, 170 Mich. 624, Mr. Justice STONE, speaking for the majority of the court, said:

"It is also the rule in this State that, if the transactions on account of which the indebtedness was incurred were tainted with usury, its effect cannot be avoided by taking other paper or security for the indebtedness, including the usurious charge."

We are satisfied that by the overwhelming weight of authority in this State and elsewhere two proposi-

tions· are established, *i. e.*, (1) that where a renewal note is given containing and. providing for usurious interest, or where usurious interest is exacted, the defense of usury not only in the particular note sued upon but in all of its predecessors where it exists, if it exists in all, is available to the maker as a defense; and (2) that as between the parties to the transaction, or holders with knowledge, all payments of usurious interest made on the series of notes will be applied by the law to the extinguishment of the debt, and this even though the parties have treated such payments as payments of interest.    To hold otherwise would be but to point a way to the evasion of this beneficent statute.    If language not necessary to decision has been used in some of our earlier cases expressing a contrary view, it must yield to the language used in our later cases where the questions were directly involved.    For certain purposes the giving of a renewal note may be treated as payment of the· old one, but it will not be so treated where the usury statute is involved.    In concluding the discussion of these questions we quote with approval the language of the supreme court of Illinois in *Saylor* v. *Daniels*, 37 Ill. 331 (87 Am. Dec. 250) :

"The court below refused to apply upon the existing note the payments formerly made upon the usurious interest.    This was error.    While it is the rule of this court that usurious interest once paid voluntarily can not be recovered back, yet that rule does not apply where the transaction has not been settled, and the lender brings his action for the recovery of an alleged balance.    In such case the borrower may defend by claiming a credit for whatever usurious interest he had paid in the same transaction.    This is not using the usury law as a sword, but strictly as a shield. The fact that new notes have from time to time been given does not change the case.    The court looks at the substance, not at the form.    When the $400 was loaned in this case, it continued one transaction until

paid, without reference to the number of balances struck, and new notes given, and until fully paid, the borrower may insist upon having past usurious payments legally applied."

We do not discuss the *bona fides* of the present plaintiff or its immediate predecessor as the case was not tried or the record made to present that question. For this reason and the further reason that the case is here upon writ of error and not case-made (*Stamp* v. *Steele*, 209 Mich. 205), we decline to follow the suggestion that we here enter judgment for the amount of the tender.

The case will be reversed with a new trial. Defendant will recover costs of this court.

MOORE, C. J., and STEERE, BROOKE, STONE, and BIRD, JJ., concurred. CLARK and SHARPE, JJ., did not sit.