BANKERS DISCOUNT CO. *v.* CINDERELLA THEATRE CO.

1. USURY—PAYMENTS ON USURIOUS NOTES CREDITED ON LEGAL INDEBTEDNESS.

> The action of a money loaning corporation in compelling a borrowing corporation to take $50,000 insurance on its president's life as a condition of receiving a loan of $5,000, for which other security was given, rendered the notes given therefor void as to the extent of the premiums paid, and all payments made will be treated as applying on the legal indebtedness evidenced by the notes.[1]

---

[1] Usury, 39 Cyc. pp. 984 (Anno), 1026, 1029.
Requiring borrower to take out life insurance as rendering loan usurious, see note in 21 A. L. R. 876.
Requiring borrower to pay insurance premiums on property mortgaged as security as rendering loan usurious, see note in 1 A. L. R. 834.
On right to have usurious payments made on previous obligation applied as principal on renewal, see note in 13 A. L. R. 1244.

2. Same—Where Balance of Former Usurious Notes Included in Notes Sued on Payments on Former Notes Considered.

In determining the amount legally due on notes which included a balance due on notes previously given to a partnership, of which the holder's president was a member, the amount of insurance premium which he knew was unlawfully included in previous notes must be considered.[2]

3. Same—Where Insurance Premiums Were Paid the Lender to Secure a Higher Interest Rate Than Allowed by Statute Notes Were Usurious.

Where the borrower was required to take insurance on the life of its president as a condition of receiving a loan, not as security therefor, but for the purpose of securing to the lender a higher rate of interest than the statute permits, the notes given for the loan were usurious and no liability attached to the borrower to pay any sums except the moneys actually received by it.[3]

4. Same—Stock Received by Payee Chargeable as Payment on Notes.

Where, at the time of making the notes, the maker gave $1,000 worth of its stock to apply on the premium on the policy it was compelled to take on the life of its president, it should be charged to the payee as a payment on the notes.[4]

5. Same—Interest Forfeited Where Payee Attempts to Compel Payment of Usurious Sums.

Where, in a suit by the payee of usurious notes, attempt is made to compel payment of the usurious sums, all interest is forfeited under 2 Comp. Laws 1915, § 5998; the rule that, where the debtor seeks relief from a usurious contract in a court of equity, he will be required to pay interest at the legal rate on the money actually received by him not being applicable.[5]

Cross-appeals from Wayne; Brown (William B.), J., presiding. Submitted April 22, 1925. (Docket No. 70.) Decided May 14, 1925.

Bill by the Bankers Discount Company against the

[2]Usury, 39 Cyc. p. 998 (Anno); [3]Id., 39 Cyc. p. 984 (Anno); [4]Id., 39 Cyc. p. 1029; [5]Id., 39 Cyc. p. 1007.

Cinderella Theatre Company, Inc., for an injunction, an accounting, and the appointment of a receiver. From the decree rendered, both parties appeal. Modified and affirmed.

*Walter M. Trevor*, for plaintiff.

*Routier, Nichols & Fildew*, for defendant.

SHARPE, J. The bill of complaint herein was filed to enjoin the Cinderella Theatre Company, Inc., hereinafter called the defendant, from disposing of or incumbering certain real estate and securities, pledged for the payment of certain notes of the defendant, held by plaintiff; for an accounting of the amount due thereon; and for the appointment of a receiver. Pending the hearing, the defendant company executed a bond, conditioned for the payment of any sum decreed to be due to plaintiff. The trial court found the defendant company indebted to plaintiff in the sum of $4,222.59. From the decree entered therefor, both parties appeal.

The plaintiff is a corporation. At the time the notes in question were given, Edward C. Frank was its president, and had entire charge of its business. He was also a general agent for the Philadelphia Life Insurance Company. Frank and Benjamin Jacobson were the sole members of a copartnership known as the Midwest Finance Company. Jacobson was a general agent for the Minnesota Mutual Life Insurance Company. Frank had appointed Jacobson a local agent for the Philadelphia company, and Jacobson in like manner had appointed Frank a local agent for the Minnesota company. The agents were entitled to a commission of 70 per cent. on the premium first paid in the Philadelphia company and 60 per cent. on those so paid in the Minnesota company. The commissions on all policies issued were equally divided between them.

On August 5, 1921, the Midwest company and Jacobson had offices at 320 Fort street, west, in Detroit. The plaintiff company moved its offices into the same suite later in that month. The lease of the premises was taken by Frank and Jacobson. The rent and the expense of up-keep were paid by the Midwest company.

On August 5, 1921, the defendant company borrowed $5,000 from the Midwest company. In order to obtain this loan, the defendant was required to take out an insurance policy in the Philadelphia company, of which Frank was general agent, on the life of its president, James N. Robertson, in the sum of $50,000. The initial premium on this policy was $1,914. This sum was included in the amount of the notes executed by the defendant. A land contract and certain securities were assigned to Jacobson as security for the payment of this loan. On October 6th there was a balance unpaid on these notes. A new loan was then made from the plaintiff company. Notes were executed therefor in the sum of $10,344.10. Of this sum defendant received a check for $7,814, at the same time giving two checks to Jacobson for $2,867.83 and $600 respectively. These checks represented the balance due on the notes executed on August 5th. They were indorsed to Frank and deposited in his account. At the time this second loan was made, the defendant was required to and did take out insurance in the Minnesota company on the life of its treasurer, T. R. Winsheimer, in the sum of $50,000. The premiums on these policies amounted to $3,552.50. In reduction of this amount, Jacobson took 100 shares of stock in the defendant company of the par value of $1,000. The land contract and securities were at this time assigned to plaintiff.

On February 2, 1922, another loan was made to defendant by plaintiff. For this defendant executed a note in the sum of $3,932.50. Of this sum,

$932.50 was the premium on another policy to be taken out on the life of Robertson. This policy was not issued, and the $932.50 was credited by plaintiff to defendant.

1. Plaintiff's counsel contends that the plaintiff had nothing to do with the first loan made and that it should not be considered in determining the rights of the parties. It is true that this loan was made by the Midwest company. Of this company, plaintiff's president was a partner. He knew that included in the notes defendant had executed and delivered to Jacobson for the Midwest company was the sum of $1,914, the amount of the insurance premium the defendant company had been compelled to pay in order to secure it. The policy was written by the company of which Frank was the general agent. If these notes were void to the extent of this sum, the payments made will be treated as applying on the legal indebtedness evidenced thereby. The balance remaining due at the time the new loan was made included this $1,914. It therefore entered into the notes given on October 6th. It was a part of the consideration for which they were given. Of its invalidity plaintiff's president had full knowledge. In our opinion, this item must be considered in determining the amount legally due from defendant to plaintiff.

2. No claim is here made that these policies were issued as an additional security for the money loaned. Robertson had served in the World War, had been wounded, and several times had been confined in hospitals. When the policy was delivered to him, a copy of his application was attached thereto. He noticed that the report of the doctor who had examined him stated that he had answered questions saying that he had never "had any accident or injury" or suffered from certain ailments with which he had been afflicted while in the service. He at once called

Jacobson's attention to this fact, and he promised to write the company and secure a waiver from them. None was obtained. It is apparent that there would have been no liability on the part of the company to pay this insurance had Robertson died. The Winsheimer policies were never delivered to him. There had been no assignment of any of these policies to secure the loans. The insurance requirement had but one purpose, and that was to permit those loaning the money to secure to themselves a higher rate of interest than the statute permits. The transactions were clearly usurious, and no liability attached to the defendant to pay any sums except the moneys actually received by it. The subject of usury is discussed at such length in the somewhat recent case of *Gladwin State Bank* v. *Dow*, 212 Mich. 521 (13 A. L. R. 1233), where the authorities are reviewed, that it is unnecessary to further consider it to reach this result.

3. The trial court found that the moneys actually received by defendant were $5,000 on the first loan, $7,814 on the second, and $3,000 on the third—in all, $15,814. He also found that the defendant company had paid thereon (including a certificate of its stock for $1,000, which will hereafter be considered) $12,838.55, leaving a balance due plaintiff of $2,975.45.

While counsel on both sides challenge the correctness of these figures, a careful reading of the record satisfies us that they are correct. The several items from which the totals are arrived at are stated in his opinion, and find ample support in the proofs. It will serve no useful purpose to quote the testimony concerning them.

4. When the second loan was made, a certificate for $1,000 of the preferred stock of the defendant company was issued in the name of Jacobson and accepted as a partial payment of the insurance premium of $3,552.50. Jacobson testified that this stock was issued for the benefit of himself and Frank, and that

Frank then had the certificate.    So far as the defendant company was concerned, it amounted to a payment of $1,000 on the premium of insurance which plaintiff insisted on its taking out to secure the loan from it.    Marion Berg, assistant treasurer and bookkeeper of plaintiff, testified as to the entries relative to the three policies issued when the second loan was made.    Her books show that a credit was given for $1,000 on the premium of the last two policies and settlement made with Jacobson after deducting it. While she was unable to identify this $1,000 as represented by the stock certificate, it is apparent that it was.    It should be charged to plaintiff as a payment on the loan made at the time it was issued.

5. The trial court allowed the plaintiff interest on the sums received by the defendant at the rate stipulated in the notes, 7 per cent.    In this we think he was in error.    The statute (2 Comp. Laws 1915, § 5998) provides in express terms that—

"in any action brought by any person on such usurious contract,    *    *    *    if it shall appear that a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, the defendant shall not be compelled to pay any interest thereon."

The cases cited in the footnote indicate that this provision has been uniformly adhered to by this court in determining the amounts due on such contracts. In *Leach* v. *Dolese,* 186 Mich. 695, 701 (Ann. Cas. 1917A, 1182), it is said:

"It follows that, if it is sought to enforce by an action a contract which in its inception was tainted by usury, the forfeiture of interest becomes operative under the statute."

See, also, *Gladwin State Bank* v. *Dow, supra.*

The plaintiff in its bill of complaint seeks to compel payment of the usurious sums included in its notes.

We may not therefore apply the rule that where the debtor seeks relief from a usurious contract in a court of equity he will be required to pay interest at the legal rate on the money actually received by him.

6. Defendant's counsel insist that these policies were issued in violation of section 6, subdivision 3 of chapter 4, part 2, of Act No. 256, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 9100 [114]), and are therefore void. In view of the conclusion reached, it is not necessary to pass upon this question.

A decree may be here entered for plaintiff for $2,975.45 and interest at 5 per cent. from June 21, 1924, the date of the decree in the circuit court. There being a substantial reduction in the amount found to be due in such decree, the defendant will have costs in this court.

MCDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.