LEON v. ZLATKIN.

1. USURY—BILLS AND NOTES—RENEWALS.
   Defense of usury in original transaction is available to maker of renewal note connected with such transaction.

2. SAME—PAYMENT—INTEREST—EXTINGUISHMENT OF DEBT.

Payments of usurious interest or of sums charged for forbearance or renewal made on series of notes as between parties to transaction will be applied by the law to extinguishment of the debt even though parties have treated such payments otherwise.

3. PAYMENT—RENEWALS—USURY.

Renewal note will not be treated as payment of original note where usury statute is involved.

4. USURY—WAIVER.

Waiver of usury may be made by borrower at time of payment, but it cannot be waived by mere statement of borrower at time of loan or at time of renewal.

5. SAME—WAIVER.

Agreement declaring absence of any defense to payment of full face amount of obligation *held*, under circumstances, mere effort to avoid statute relating to usury.

6. SAME—PAYMENT.

Defendant in suit to foreclose real estate and chattel mortgages securing note tainted with usury may invoke statute to fullest extent and be credited with all payments made.

7. VENDOR AND PURCHASER—FORECLOSURE—TENDER—USURY.

Decree of foreclosure was properly entered where defendants made no tender of any amount but decree was for an excessive amount where interest was allowed on usurious note.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted October 5, 1933. (Docket No. 76, Calendar No. 37,393.) Decided December 5, 1933.

Bill by Morris B. Leon against Solomon Zlatkin and another to foreclose mortgages on real and personal property. From decree for plaintiff for alleged insufficient amount, both parties appeal. Modified and affirmed.

*David Anderson*, for plaintiff.

*F. C. Cogshall* and *Lewis R. Williams,* for defendant.

BUTZEL, J.   Solomon and Bessie Zlatkin own a summer hotel at South Haven, Michigan.   They borrowed from plaintiff, Morris B. Leon, the sum of $6,830 on May 11, 1928, and in return gave him their note for $8,000 with interest at 7 per cent., payable September 15, 1930.   They secured the note with a real estate mortgage on the hotel property and a chattel mortgage on the personal property used in connection with the hotel.   The $1,170 difference between the amount of money received and the amount of the note represented a bonus or commission of $1,120 paid to the plaintiff for making the loan and a $50 attorney fee paid for the services of plaintiff's attorney.   On the day the loan was made, plaintiff signed and gave defendants a letter agreeing that if they were unable to meet the entire mortgage when due, they were to have the privilege of paying all interest and at least one-half or more of the principal, in which event plaintiff would extend the time of payment for one year, at the same rate of interest as was agreed upon in the original mortgage, defendants to pay plaintiff's ''broker the same rate per thousand per annum'' as was paid for the original loan.   The record leaves no doubt whatsoever but that plaintiff was his own ''broker'' and that the broker's fee, commission, or bonus, whatever it may be called, for the renewal of the loan was to go to plaintiff.

Defendants secured a renewal of the loan both on June 18, 1930, and on September 15, 1931, by paying plaintiff each time a commission of $560, together with some minor expenses in connection with the renewals.   In addition to signing extension

agreements and a new chattel mortgage each time, defendants stated in affidavits, notarized by plaintiff's attorney, that no incumbrances had been created or placed against the personal property and that no improvements, replacements, or repairs had been made to the realty so as to create the possibility of any mechanics' liens being placed against the property; that the amount owing was the sum of $8,000, which was defendants' due obligation for moneys loaned to them, and that neither of them had any defense whatsoever to such claim of $8,000; that the representations were made for the purpose of inducing plaintiff to extend the real estate mortgage and to accept a new first mortgage upon the real and personal property hereinbefore described. Some of the documents were executed in Illinois, but plaintiff conceded on the record that the usury laws of Illinois were similar to those of Michigan.

Sums aggregating $2,146.44, claimed to be interest, were paid on the loan from time to time and, in addition thereto, the sum of $1,120 was paid in two annual installments of $560 each for the two extensions of the loan. Upon defendants' failure to make payment on September 15, 1931, in accordance with the terms of the second extension agreement, plaintiff filed a bill to foreclose the mortgages on both the real and personal property. Plaintiff concedes that only $6,830 was loaned by him in the first instance, and that the difference of $1,170 between the amount of the note and the actual sum advanced is usury and cannot be recovered. He claims, however, that when defendants at the time of each renewal made solemn statements under oath that they had no defense to the claim for the face amount of the loan, the taint of usury was thereupon lifted as to the $6,830, and defendants should pay

interest on such amount from the time the original loan was made. He further claims that the $560 paid at the time of each renewal was a legal consideration belonging to him and should not be credited on the loan.

Defendants in their answer claim that the entire transaction was continuously usurious from its inception, and that, as provided in 2 Comp. Laws 1929, § 9241, plaintiff is only entitled to the actual amount originally loaned, less all payments of every kind made by them. It is conceded that the aggregate sum paid for interest and commissions amounts to $3,266.44. The trial court rendered a decree for plaintiff. He credited defendants with all sums paid for brokerage fees, but charged them with interest from the date on which the loan was first made.

In *Gladwin State Bank* v. *Dow*, 212 Mich. 521 (13 A. L. R. 1233), the law is set forth as follows:

"We are satisfied that by the overwhelming weight of authority in this State and elsewhere two propositions are established, *i. e.*, (1) that where a renewal note is given containing and providing for usurious interest, or where usurious interest is exacted, the defense of usury not only in the particular note sued upon but in all of its predecessors where it exists, if it exists in all, is available to the maker as a defense; and (2) that as between the parties to the transaction, or holders with knowledge, all payments of usurious interest made on the series of notes will be applied by the law to the extinguishment of the debt, and this even though the parties have treated such payments as payments of interest. To hold otherwise would be but to point a way to the evasion of this beneficent statute. If language not necessary to decision has been used in some of our earlier cases expressing a contrary view, it must yield to the language used in our later cases where

the questions were directly involved. For certain purposes the giving of a renewal note may be treated as payment of the old one, but it will not be so treated where the usury statute is involved."

Plaintiff contends, however, that there was an absolute waiver of all claims of usury when the renewals were made, and that they should be regarded as voluntary payments or settlements of the usurious debt. Usury is a personal defense and may be waived by the borrower at the time of payment. The transaction may be also purged of usury in the extension of the loan. One manner of doing this is pointed out in *Gladwin State Bank* v. *Dow, supra.* See, also, *Michigan Loan Ass'n* v. *Cahill,* 253 Mich. 358 (74 A. L. R. 1181). However, this cannot be done by a mere statement of the borrower waiving the defense of usury either at the inception of the loan or at the time of renewal. See *Clark* v. *Spencer,* 14 Kan. 398 (19 Am. Rep. 96); *Bosler* v. *Rheem,* 72 Pa. 54. When a debt has matured, any sums charged for forbearance and a renewal will be applied to the reduction of the debt. *Bateman* v. *Blake,* 81 Mich. 227. The entire transaction in the instant case was continuously usurious, usury being added to usury. The subterfuge of entering into an agreement declaring the absence of any defense to the payment of the full face amount of the obligation was only a palpable effort to avoid the provisions of the statute relating to usury, and will not be given any effect by this court.

Plaintiff is asserting his claim against defendants who are only defending and not pressing any claim against plaintiff. Defendants, therefore, are entitled to invoke the aid of the usury statute to the fullest extent. They should be credited with all payments made by or exacted from them for interest,

commissions and brokerage fees, amounting to $3,266.44. After this amount is deducted from the $6,830, the true amount of the original loan, there is a balance of $3,563.56 left. No tender was made by defendants to plaintiff and a decree of foreclosure was properly entered, but for an excessive amount. The case is, therefore, remanded to the trial court with instructions to modify the decree by reducing the amount found due in accordance with this opinion, and to take such further steps as may be necessary in the premises. Costs will be allowed to defendants.

MCDONALD, C. J., and WEADOCK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.