The plaintiff, the United States National Bank of New York, brought its action against the defendants to recover the sum of $5,000 due by the defendants to it on a promissory note which the defendants, McNair 
Pearsall, under date of 19 November, 1891, had executed to the First National Bank of Wilmington, N.C. for the sum of $5,000, and payable thirty days after its date, and which said note the said First National Bank of Wilmington had indorsed to the plaintiff for value and before maturity, as plaintiff alleges.
The defendants, McNair Pearsall, by their answer admitted that the said note had been indorsed before maturity to the plaintiff, but denied, on information and belief, that the plaintiff was a purchaser for value of the note in controversy; and further alleged as a defense a set-off and counterclaim, as appears by the answer of the said defendants.
The plaintiff filed a replication to the said answer, as appears by the record.
The following issues were submitted to the jury:
"1. Is the plaintiff a purchaser for value of the note sued on without notice? Answer: `No, not a purchaser for value.'
"2. What sum, if any, are defendants entitled to recover by way of counterclaim against cause of action sued on? Answer: `$4,199.89.'"
The defendants introduced as a witness in their behalf A. K. Walker, who testified as follows: "I was corresponding clerk of the First National Bank of Wilmington for some months prior to its suspension. The bank suspended on 25 November, 1891. I remember the note given by the defendants to the United States National Bank of New York. Several other notes were sent at the same date, and (337) all were indorsed to plaintiff before they were due. The notes *Page 216 
sent in the batch with the note in controversy amounted to $17,000, and none of these had matured. These notes were discounted for the First National Bank of Wilmington by the plaintiff. The First National Bank of Wilmington did business on 24 November, 1891, but did not open its doors on 25 November, 1891."
The defendants' counsel handed a paper to the witness, who stated that the paper is the account current with the United States National Bank.
"The amount of $16,911.33 under date of 23 November on this account is the proceeds of the $17,000 worth of notes which were rediscounted by the said plaintiff bank for the First National Bank, and appears on the account as of the date of 23 November, 1891, and is the last entry on the account as to its position. The amount was placed to the credit of the First National Bank and subject to its sight draft. This account is in the same handwriting as nearly all previous monthly accounts, and came by mail from the plaintiff bank in an envelope stamped `United States National Bank.' The account runs from 1 November, 1891, to 30 November, 1891, and the said account, being an exact copy of all of the debits and credits from 1 November to 30 November, 1891, both inclusive, is made a part of this evidence, and marked Exhibit `A.'" The plaintiff objects to the introduction of this account. Objection overruled; plaintiff excepts.
"The $17,000 worth of notes, which includes the note in controversy, were sent on 21 November, 1891, to plaintiff for rediscount. The United States National Bank was the New York correspondent of the First National Bank and its bank of deposit in New York. The notes amounting to $17,000, among which was included the note sued (338) on, were sent to plaintiff indorsed by the First National Bank on 21 November, 1891, and I sent them myself that day. They left here the night of the 21st by mail and were the last batch of notes sent by First National Bank before its failure to the United States National Bank, and in the course of mail they reached New York on the morning of 23 November and were discounted and placed to the credit of the First National Bank on that day.
"According to the account which has been introduced, at the close of the account, the balance due the First National Bank on the said account is $21,279.33." The plaintiff objects to any testimony as to the balance due the First National Bank of Wilmington by the plaintiff bank on any day between 21 November, 1891, and 30 November, 1891. Objection overruled; plaintiff excepts.
"On 21 November, 1891, the balance due the First National is $43,387. 02; on 23 November, $28,338.75; on 24 November, $17,586.44; on 26 November, $21,640.51; on 27 November, $21,236.04; on 28 November, *Page 217 
$21,370.78. There were quite a number of First National Bank checks that were not paid by the First National Bank, but none were refused payment up to the time that the First National Bank suspended."
On cross-examination the witness testified that these accounts current are made out in rough and sent out for the purpose of ascertaining errors.
"The plaintiff bank was our regular New York correspondent, and at the date the plaintiff discounted the defendants' note for the First National Bank plaintiff bank held a large amount indorsed by the First National Bank which the First National Bank had received money on and all of which had been passed to the credit of the First National Bank. (339)
"At the time of the suspension of the First National and up to 1 December, when account current was rendered, none of the paper rediscounted by the plaintiff for the First National Bank had become due. I am now satisfied that the plaintiff bank held $48,500 worth of paper and notes indorsed by the First National Bank, including the $17,000 sent on 21 November. All of this had been placed to the credit of the First National Bank before it failed. At the close of business on 24 November, 1891, the defendants had on deposit the sum of $4,199.89 in the First National Bank."
The plaintiff introduced the depositions of J. H. Parker, H. C. Hopkins and J. J. McAuliffe.
This is all the evidence introduced by either party at the trial, and there was no other evidence as to the discounted paper held by plaintiff, nor as to how much of it had been collected.
The court charged the jury as follows:
This is an action brought by plaintiff to recover on a note for $5,000 set out in the complaint. This note, it is admitted, was payable to the First National Bank of Wilmington and indorsed by it to plaintiff and discounted by plaintiff on 23 November, 1891. It is admitted that said note with others amounting in all to $17,000 were mailed to plaintiff on 21 November, 1891, and discounted by plaintiff on 23d; and on that date the proceeds were placed to the credit of the First National Bank on the books of plaintiff, to wit, $16,911.33.
It is admitted that at the time said note was discounted and proceeds placed to the credit of the First National Bank, the defendants had on deposit in latter bank $4,199.89, and that said sum was still due defendants by said First National Bank when it suspended on 25 November, 1891; and that it has never been paid. There is (340) no evidence that plaintiff had notice of this deposit. *Page 218 
An account rendered by plaintiff to First National Bank is in evidence. It is not denied that this identical account was rendered by plaintiff to said First National Bank.
On said account it appears that the First National Bank was credited 23 November, 1891, with an item of discount, $16,911.33. It is not denied that this item is composed of the batch of papers aggregating $17,000, and that defendants' note for $5,000 was one of the notes discounted and composing that item. It appears on the account that the only other item received by plaintiff and credited said First National Bank after the 23d and after the entry upon said account of the $16,911.33 item was one upon the 24th of $3,167.21; one upon 25th of $7,161.74; one upon 25th of $1,992.33; one upon 30 November of $30, and one same date $110.89. The account then closes, showing balance due First National Bank of $21,279.33. This shows that the proceeds of the discount of defendants' note, although credited on plaintiff's books, has never been paid out by plaintiff.
The evidence shows that plaintiff held a large amount of paper indorsed by First National that had not then matured. There is no evidence that plaintiff has failed to collect any of such paper except the notes sued on.
Upon this state of facts and upon the entire evidence the court is of the opinion that you should answer first issue "No."
The court is of the opinion that defendants may plead their deposit in First National Bank as a set-off and counterclaim against their note sued on — there being no evidence that the plaintiff has paid (341) the said money to the receiver.
It is admitted that plaintiff received defendants' letter and also the telegram in evidence.
You should also, upon the undisputed evidence not denied, answer second issue, "$4,199.89."
In obedience to the instructions of the court the jury answered the first issue "No, not a purchaser for value;" and the third issue, "Yes, sum of $4,199.89."
Motion for a new trial, and the plaintiff assigns as errors:
1. The error of the court in allowing the introduction of evidence against the plaintiff's objection.
2. That his Honor erred in charging the jury "this shows that the proceeds of the discount of defendants' note, although credited on plaintiff's books, has never been paid out by plaintiff."
3. That his Honor erred in charging the jury that "upon this state of facts and upon the entire evidence the court is of the opinion that you should answer the first issue `No.'" *Page 219 
4. That his Honor erred in charging the jury that the court is of the opinion that "defendants may plead their deposits in the First National Bank as a set-off and counterclaim against their notes sued on;" and in further charging the jury that the defendants were entitled to plead a counterclaim in the sum of $4,199.89.
The motion for a new trial was overruled, and from a judgment for defendants plaintiff appealed.
As between the defendants and the First National Bank of Wilmington the deposits of $4,199.89 would have been a good set-off in an action by said bank on the defendant's note for (342) $5,000. 1 Morse, Banks, sec. 338, and cases there cited. But it would not be a set-off to an action by the plaintiff if said note was assigned before maturity for value and without notice. The presumption is that it was. It is indeed conceded that the assignment was before maturity and without notice of any equity, but it is denied that the assignment was for value.
It is not controverted that the note was sent by the First National Bank of Wilmington to the plaintiff with other notes, the whole aggregating $17,000, which were on 23 November, 1891, rediscounted and the proceeds, $16,911.33, placed to the credit of the Wilmington bank, but no money was paid thereon at that time. If that were all, the plaintiff was not a purchaser for value, for it had paid nothing, and to the action by it on the note the defendants could plead the set-off they had against the original payee.
It further appears, however, that the balance to credit of the Wilmington bank on books of plaintiff on close of business on 23 November was $28,338.75, including said credit of $16,911.33. There were subsequent payments to check of the Wilmington bank before notice of defendants' equity, amounting to $19,530.18. There were subsequent credits also, which left a balance due the Wilmington bank on 28 November of $21,279.33. The well-settled rule is that "the first money in is the first money out."Boyden v. Bank, 65 N.C. 13. Deducting, therefore, from the $28,338.75 on plaintiff's books, 23 November, to credit of Wilmington bank the $19,530.14 paid out to its order before 28 November, there appears only $8,808.61 of said balance which has not been paid. As the full value of all the notes rediscounted on 23 November was $16,911.33 it follows that $8,102.72 has been paid by plaintiff on said notes. *Page 220 
Thus the plaintiff was a purchaser for a valuable consideration, (343) before maturity and without notice. By the law-merchant the defendants cannot set up this set-off. 1 Daniel Neg. Inst., sec. 758b; Cromwell v. County of Sac, 96 U.S. 60. It is true, if (as has been said) there had nothing passed, and the plaintiff had simply given the payee credit on its books, this would not have made the plaintiff a purchaser for value. Mann v. Bank, 30 Kan. 412; Bank v. Valentine, 18 Hun, 417; Bank v. Newell, 71 Miss. 308. The same might be true if the amount paid was so small as to be merely colorable, or to suggest fraud or notice of defendants' equities.
But here the plaintiff has paid nearly half. The balance is a valid indebtedness of the plaintiff to the Wilmington bank, which passes with its other assets to the receiver of that bank, to be collected and applied prorata to all its creditors, including the defendants, who are creditors to the extent of their deposit.
Error.
Cited: S. c., 116 N.C. 555; Mfg. Co. v. Tierney, 133 N.C. 638; Bankv. Walser, 162 N.C. 62; Latham v. Spragins, ib., 408.
(344)