Kedey v. Petty, Gdn.

---

KEDEY v. PETTY, GUARDIAN, ET AL.

[No. 18,416. Filed October 4, 1899.]

153  179<br>f168  666

SPECIAL FINDING.—*Must be Construed as a Whole.*—A special finding must be considered as a whole, and force given to all findings clearly relating to the same fact or transaction. *pp. 183-185.*

BILLS AND NOTES.—*Renewal.*—The term "renewal," as applied to promissory notes, means the reëstablishment of the particular contract for another period of time. *p. 184.*

SPECIAL FINDING.—*Sufficiency.*—In a suit by a creditor, a special finding that defendant executed a note to plaintiff which was afterwards renewed, and that judgment was obtained by plaintiff on the renewal note, is a sufficient finding that the judgment was rendered against defendant. *p. 185.*

FRAUDULENT CONVEYANCE.—*Pleading.*—*Proof Necessary.*—*Judgment.*—*Presumption.*—In a suit by a judgment creditor to set aside a conveyance as fraudulent, it is sufficient, to entitle plaintiff to maintain his suit, to allege and prove the rendition of his judgment prior to the commencement of such suit; the continuance of such judgment in force being presumed in the absence of affirmative proof established under a proper answer. *p. 186.*

HUSBAND AND WIFE.—*When Dairy and Poultry Products Not Separate Property of Farmer's Wife.*—*Mortgage.*—Where by the assent of her husband a farmer's wife took charge of all domestic dairy and poultry products as her own, a portion of which was expended for groceries and clothing for the family, and a part used by the husband, the production and sale of such products did not constitute the wife's separate business within the meaning of §6975 Burns 1894; and notes and mortgages executed by the husband to the wife for sums of money derived from such products received by him

Kedey *v.* Petty, Gdn.

from his wife, are without consideration, and void as against creditors. *pp. 186-189.*

COSTS.—*Failure of Special Finding to Specify Amount.—Appeal.—* A provision in a decree for the payment of a specific amount of costs accrued in the original judgment will not be stricken out on appeal because the special finding of the trial court did not specify the amount of costs accrued. *p. 189.*

From the Clinton Circuit Court. *Affirmed.*

*M. A. Morrison* and *J. T. Hockman,* for appellant.

*Palmer & Palmer, W. S. Sims, C. G. Guenther* and *A. B. Clark,* for appellees.

HADLEY, J.—The special finding discloses that appellant was intermarried with Matthew T. Kedey in 1862, and is still his wife. She had no property at the time of her marriage, except one heifer, two shoats, and one dozen chickens, and has since acquired none by gift, devise, or descent, except one cow, given her by her husband to replace the heifer, which died a few months after the marriage. At the time of the marriage, Matthew T. Kedey had about eighty-six acres of land in Clinton county, upon which they settled, and have continuously resided, raising a family of three children. At no time has appellant been engaged in any business or employment upon her own account, but during all her married life has been engaged in performing such domestic duties as pertain to a farmer's wife. Within the last twenty-four years, by an arrangement with her husband, appellant received and kept the proceeds of the surplus butter, eggs, chickens, ducks, geese, and garden products, grown and produced on her husband's farm by their joint labor, and sold; she, from such proceeds, purchasing an indefinite portion of the groceries and clothing used by the family, and her husband purchasing the residue. From the sales of such property within the last twenty-four years, appellant, from time to time, let her husband have small sums of money, amounting in the aggregate to $1,200, her husband agreeing with her that he would repay the money so received from

her. On the 28th day of December, 1891, her husband executed to appellant a note, whereby he agreed to pay her, twelve months after date, $1,200 with eight per cent. interest from date. On the 1st day of January, 1896, her husband executed to her another note calling for $399.55, payable one day after date, with eight per cent. interest and attorney fees. On the 5th day of December, 1896, her husband executed to her another note calling for $170, payable one day after date, with eight per cent. interest and attorney fees. On the 19th day of December, 1896, her husband executed to her still another note, calling for $896.68, payable one day after date, with eight per cent. interest and attorney fees. On the 9th day of December, 1896, appellant and her husband executed a mortgage on sixty acres of the husband's lands to Kramer, to secure $1,100, money borrowed and used by the husband in the payment of his individual debts. On the same day, to wit, December 9, 1896, her husband executed to appellant his mortgage upon all of his lands, subject and junior, however, to the Kramer mortgage, to secure the payment to appellant of said several notes, namely: one dated December 28, 1891, for $1,200, one dated January 1, 1896, for $399.55, and one dated December 5, 1896, for $170. On the 24th day of December, 1896, her husband executed to her a further mortgage upon all his lands, purporting to secure to her the payment of said note dated December 19, 1896, calling for $896.68. Each of the mortgages was duly recorded in the recorder's office of Clinton county within the time prescribed by law.

The husband's lands at the date of said mortgages were of the value of $3,440. Appellant's husband, at the date of said mortgages and at the commencement of this suit, had no other property subject to execution.

Appellant, on the 26th day of December, 1896, brought her action in the Clinton Circuit Court upon all of her said notes and mortgages against her husband, her husband being

present with her in town, and was served with summons on the same day; and on the 5th day of January, 1897, appellant took judgment and a decree of foreclosure against her husband, and all of his lands, by default, for $3,369.80 and costs.

At the time of the execution of said notes and mortgages to appellant, her husband and their son, William U., were present with her.   On the 13th day of January, 1897, her husband executed to appellant a quitclaim deed purporting to convey to her all of said mortgaged premises.   Between the dates of August 13, 1892, and January 1, 1896, appellant's husband and their son, William U. Kedey, executed their notes to divers persons for borrowed money, amounting to $1,670, which, remaining unpaid, judgments were taken thereon against the makers at the January term, 1897, of the Clinton Circuit Court.   Executions were issued upon the judgments against both defendants, and in each case returned *nulla bona*.   William U. is a resident of the county, and never had any property subject to execution.   Each of the notes and mortgages purporting to secure the same was executed to appellant by her husband without consideration, and the last three notes and both mortgages were executed by her husband, and received by her, for the purpose of hindering and delaying the creditors of the husband; and the foreclosure of the mortgages and quitclaim deed to appellant were further steps mutually intended by appellant and her husband to hinder and delay the plaintiffs and the husband's other creditors from the collection of their debts.

The complaint is by the judgment creditors of the husband, and seeks to vacate, as fraudulent against the plaintiffs, the judgment and decree rendered in favor of appellant January 5, 1897, for $3,369.80, and also the quitclaim deed to appellant dated January 13, 1897, and to subject the lands to the payment of the plaintiffs' judgments.   A demurrer to the complaint was overruled, trial upon the general denial, and finding and judgment for the plaintiffs.

No infirmity of the complaint is pointed out, but a reversal of the judgment is asked for alleged errors of the court in stating conclusions of law and in overruling appellant's motion for a new trial and to modify the judgment.

The conclusions of law are to the effect that the lands described in the complaint ought to be sold for the payment of the plaintiffs' judgments, subject to the Kramer mortgage and the inchoate rights of appellant. It is insisted that the facts found do not sustain the conclusions of law, in this: First, that it is not found that the plaintiffs, at the commencement of this suit, held judgments against Matthew T. Kedey; and second, that such judgments were unpaid.

It is stated in the special finding that on the 13th day of August, 1892, William U. and Matthew T. Kedey executed their note for borrowed money to the plaintiffs Allen, which note was renewed for one year from August 13, 1893, and which renewed note was credited September 27, 1895, by $86.50. "Complaint filed on it in this court December 26, 1896. Judgment taken on January 9, 1897, for $180.63 and costs, in favor of John P. Allen and Emma Crull. Execution issued on the same, January 11, 1897. The said William U. filed his schedule January 14, 1897, showing his entire property to be of the value of $230.30. That on the 13th day of January, 1897, the said Matthew T. filed his schedule showing his personal property to be of the value of $187.75, and eighty-six acres of real estate mortgaged for $4,463.80; and said execution was returned, 'No property found on which to levy,' and 'Wholly unsatisfied.' "

With respect to the plaintiffs, Petty and Wilson, the special finding recites the execution to each of promissory notes for borrowed money by William U. and Matthew T. Kedey, the rendition of judgment thereon by the Clinton Circuit Court and that said judgments remained wholly unpaid.

The first objection urged is that these findings are insufficient in that they do not find in terms that the several judgments were rendered against Matthew T. Kedey. We concede the premise that nothing can be taken by intendment, and, if it does not appear from the findings that the plaintiffs, at the commencement of the action, had valid, subsisting judgments against Matthew T. Kedey, they cannot call in question his right to mortgage and convey his lands to others. With respect to the Allen note,—the finding recites the execution of the note by William U. and Matthew T. Kedey, September 13, 1892, and adds, "Which note was renewed September 13, 1893, for one year." From this it is urged that we can not determine that the note was renewed by the same parties, or, rather, that Matthew T. Kedey was a party to the renewal, and, if not a party to the renewal, could not have been a party to the judgment rendered thereon.

There can be no doubt but the words "which note" refer for their antecedent to the note executed by William U. and Matthew T. Kedey. No other note between the parties, or any of the parties, was before the court. And it was the note of the two that was renewed, the obligation of both to pay the plaintiff a sum of money. How, then, could the obligation be renewed by a single one of them, or by one of them and a stranger? "Renewed" or "renewal," as applied to promissory notes, in commercial and legal parlance, means something more than the substitution of another obligation for the old one. It means to reëstablish a particular contract for another period of time. It means to restore to its former conditions. "An obligation on which the time of payment has been extended." Eng. Law Dict. 686. "Imparting continued or new force and effect." And. Law Dict. 878. "To make again." 2 Bouv. Law Dict. 876; *Daggett* v. *Daggett*, 124 Mass. 149, 151. To find, therefore, that the particular note of William U. and Matthew T. Kedey was renewed, in the absence of any restriction or limitation, is equivalent to

a finding that the renewal was by the same parties as the original, and that the note sued on was the note of Matthew T. Kedey.

It is further contended that the finding does not show that the plaintiffs had recovered judgment against Matthew T. Kedey. The finding continues: "Upon the renewed note $86 was paid September 27, 1895. Complaint filed on it in this court December 26, 1896. Judgment taken on January 9, 1897, for $180" in favor of the Allens. "Execution issued on the same, January 11th. * * * On the 13th day of January, 1897, the said Matthew T. filed his schedule," showing no property subject to execution, and "Said execution was returned 'No property found.' "

In ascribing meaning and effect to a special finding, we must read and consider it as a whole, and give force to all findings clearly relating to the same fact or transaction. *Cleveland, etc., R. Co.* v. *Closser*, 126 Ind. 348, 367, 9 L. R. A. 754, 22 Am. St. 593. The finding shows that the complaint was filed on the renewed note; judgment rendered in favor of the Allens; execution issued on "same;" Matthew T. Kedey filed his schedule, showing no property subject to execution, and "said execution" was returned "No property found" upon which to levy.

The facts are loosely stated, but, taken together, we think they sufficiently show that the judgment was rendered against the defendant, Matthew T. Kedey. But it is further insisted that the special finding is insufficient because it does not show that the Allen judgment against Matthew T. Kedey was unpaid at the time of the commencement of this suit. In this respect it is sufficient to entitle the plaintiffs to maintain their suit to allege and prove the rendition of their judgments against Matthew T. Kedey, prior to the commencement of this action. *Pierce* v. *Hower*, 142 Ind. 626, 632. The rendition shown, it will be presumed the judgments continue in force and effect. If for any reason they have been annulled, this is an affirmative defense which the

defendants must establish under a proper answer, if they would profit by it. *Campbell* v. *Cross*, 39 Ind. 155; *Law* v. *Vierling*, 45 Ind. 25; *Blackburn* v. *Crowder*, 108 Ind. 238, 241; *State, ex rel.,* v. *Scanlon*, 2 Ind. App. 320, 328; 11 Ency. Pl. and Pr. 1164.

The plaintiff, Allen, was not required to prove the non-payment of his judgment. Appellant's only answer was the general denial and, under this answer, she could not be permitted to prove it. *Pierce* v. *Hower*, 142 Ind. 626, 632. Hence she is not in a situation to complain of the absence of the fact from the special finding. We think, therefore, that the facts contained in the special finding are sufficient to support the judgment, and that the conclusions of law stated thereon were correct.

It is vigorously urged that a new trial should have been granted appellant for failure of the evidence to sustain the findings. The contention is that the evidence proves that, soon after their marriage in 1863, appellant made a valid agreement with her husband, whereby she was to have the proceeds of the butter and eggs, poultry, and other produce, and that after the agreement she prosecuted a business of her own with respect to such things, and that the money received therefrom was her own separate property. The evidence of such an agreement was given by the appellant and is as follows:.

"Q. What arrangement, if any, did you have with your husband? A. I was to have what I made off the things that I sold about the house; that is, the produce that I got together. Q. When was the arrangement made with your husband? A. Right away after we were married, as soon as we went to housekeeping. Q. How did you make the arrangement? A. We just made the arrangement that the cows and the chickens that I worked with, I was to have the benefit of. He told me that was to be mine. Q. What was said about the groceries? A. He said I was to buy the groceries if I wanted to. Q. What about the clothing?

A.   I don't know that there was anything said at that time about that."

Her husband was a witness for appellant and examined at length and made no mention of any agreement or understanding of the character insisted upon, and we perceive no just ground for appellant's insistence that the court should have found that a valid contract existed between appellant and her husband, in virtue of which she received as her own separate property the money she afterward let him have.

Contracts between husband and wife, while sometimes upheld in this State, when clearly established, are not favorites of the law, and can not be established by such vague and indefinite testimony as that given by appellant.   At common law such contracts were wholly void, and the rule has been relaxed by statute in this State only so far as to enable a married woman to manage and enjoy her own separate business and estate.   The importance of protecting the home against the mischiefs likely to result from unrestrained commercial dealings between husband and wife is still recognized in this jurisdiction, and the rule of the common law can not be extended beyond the letter of the statute. *Barnett* v. *Harshbarger, Adm.*, 105 Ind. 410.   It is immaterial, therefore, whether or not appellant and her husband entered into the agreement contended for.   It is a subject about which they, as husband and wife, had no power to contract.   No claim is made that the money received by the wife was a gift from her husband, and with that question we have nothing to do.

The evidence shows that the husband sometimes assisted appellant in milking the cows, furnished feed for the cows and poultry and generally accompanied her to market.   She made the butter, gathered the eggs, tended the poultry, and, assisted by the children, gathered wild plums and grapes and sold them on the market.   The surplus produce she "got together" she sometimes sold for cash, and at others exchanged for family groceries and clothing for herself and

children, and occasionally for her husband.   The money
received from produce she claimed as her own, and, from
time to time, for twenty-four years next before 1891,
let her husband have small sums as his needs required.
There is no pretense that under the "arrangement" she was
to buy the groceries, or any part of the family clothing, and,
although she testified that she bought all the sugar and coffee,
teas and spices for the family, and all her own and the chil-
dren's clothing, except boots for the boys, yet, in all the
twenty-four years, no question ever arose that she was buy-
ing more or less than she ought, or that she was exceeding
her contract.   Taken as a whole, the evidence shows that
her produce fund was held and administered by her for the
benefit of the family in like manner as the fund from her
husband's farming operations was held and administered by
him, and no accounting by the husband deemed proper, so
far as the evidence discloses, nor made, nor requested by her,
until 1891, twenty-seven years after the arrangement was
entered into, and about the time she first learned that her
husband was standing as surety for their son.

The business relation shown to exist between ap-
pellant and her husband is common to farmers' families,
springing from mutual confidences and the exigencies of
farm life, and it would be a novel and dangerous doctrine to
hold that a wife's dominion over the domestic dairy and
poultry products and the fund arising therefrom, with the
husband's assent, constituted her separate business within
the meaning of §6975 Burns 1894.   We are of opin-
ion, therefore, that the money appellant let her husband
have, as arising from the family produce, was money received
by her while in the service of her husband and family and
belonged to her husband, and furnished no consideration for
the notes and mortgages or the quitclaim deed involved in
this suit.

We have not overlooked the fact that the evidence shows
that appellant, upon her marriage, received from her mother

cne heifer, two shoats, and one dozen chickens, and it is argued that a sum equal to appellant's recovery against her husband proceeded therefrom as natural accretion. The heifer died within a few months, we are not advised as to what became of the shoats, and the dozen chickens constitute rather a slender foundation for a fortune of $3,369, the amount of the judgment and decree assailed in this suit. There is evidence to the contrary, and we, therefore, avail ourselves of the rule applicable to findings on appeal, and leave the judgment of the lower court, upon this point, undisturbed. We think the finding of the court is sustained by the evidence, and is not contrary to law; and the motion for a new trial was therefore properly overruled.

Appellant's motion to modify the judgment was overruled. The point stated against the judgment is but a renewal of the objection urged to the special finding, that judgments were rendered in favor of the plaintiffs and against Matthew T. Kedey, and the conclusions of law thereon. We have fully considered this question in the former part of the opinion.

The contention that the provision in the decree for the payment of a specific amount of costs accrued in the original judgments of the plaintiffs should have been stricken out because the special finding did not state the specific amounts accrued, can not be sustained. *Palmer* v. *Glover*, 73 Ind. 529, 533; *Pittsburgh, etc., R. Co.*, v. *Town of Elwood*, 79 Ind. 306; *Dufour* v. *Kious*, 91 Ind. 409.

We find no error in the record. Judgment affirmed.