NEW JERSEY TITLE GUARANTEE & TRUST CO. *v.* McGRATH.

BILLS AND NOTES—RENEWAL NOTES—HOLDER IN DUE COURSE—DIRECTED VERDICT.

> A bank which discounted a note given for stock sold in violation of the blue sky law without notice thereof, and credited the payee's account with the proceeds, was not, at the maturity of the note, a holder in due course, where, at that time, the payee's account contained a greater amount than the face of the note, but where renewal notes were given, and at the maturity of the last renewal note the payee's account was exhausted, the trial court, in an action thereon, was in error in holding that the bank, as matter of law, was not a holder in due course. FELLOWS, WIEST, and McDONALD, JJ., dissenting.

Error to St. Clair; Law (Eugene F.), J. Submitted October 23, 1928. (Docket No. 53, Calendar No. 33,870.) Decided April 17, 1929.

Assumpsit by the New Jersey Title Guarantee & Trust Company against Michael F. McGrath on a promissory note. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Hobart B. Hoyt* and *Percy J. Donovan,* for plaintiff.

*Monaghan, Crowley, Reilley & Kellogg,* for defendant.

FELLOWS, J. (*dissenting*). This is the second appearance of this case in this court. See *Title Guarantee & Trust Co.* v. *McGrath,* 239 Mich. 404. There has again been a verdict directed for defendant, both parties having treated the case as presenting ques-

---

As to whether crediting the proceeds of negotiable paper to holder's deposit account constitutes bank a holder in due course, see annotation in 6 A. L. R. 252; 24 A. L. R. 901.

tions of law alone. We briefly dispose of the questions which do not go to the main questions. The court correctly held that Mr. Ward, who was associated with Mr. Reilley in the defense, but who had not formally entered his appearance, could participate in the trial. The trial court excluded testimony taken by deposition which should have been received, but as the ultimate facts are without dispute and control the propriety of the directed verdict, such rulings do not call for reversal.

Undisputed, the following facts appear: Defendant purchased of the Lynch Construction Company its stock, which had not been approved by the Michigan Securities Commission, and paid $500 by check and gave his 90-day note for $4,500 on June 9, 1923. The Lynch Construction Company indorsed the note, discounted it with plaintiff, and its account was credited with the proceeds; at no time before the maturity of the note was the company's account drawn down below the face of the note, but there was drawn from the account before maturity the amount of the balance on the date of purchase together with the face of the note; but many deposits were made and the balance kept at a substantial sum. When due, $1,000 was paid, and a renewal note for the balance was given, due in 90 days. The state of the account continued as before. When the renewal note fell due another $1,000 was paid and another renewal note was given for the balance. On December 31, 1923, before this note became due, the Construction company's account was overdrawn $960.91. Plaintiff had no actual knowledge of the consideration of the original note. It is conceded that the consideration of the original note failed; it was given for stock sold in violation of a penal statute, no stock was ever delivered to defendant,

and the stock eventually proved to be worthless; in the hands of the Construction company or of one not a *bona fide* purchaser, the note was not enforceable. The question presented, therefore, is whether plaintiff under the facts stated is as matter of law a *bona fide* holder—a holder in due course.

Plaintiff's counsel do not controvert the rule that the passing of credit to the account of the payee of the note upon its discount does not alone make the plaintiff a holder in due course, that such credit must be exhausted before value has been paid. They do urge, however, that it is not necessary in order to make the bank a holder for value that the credit should be exhausted before the maturity of the note, but insist that, if exhausted at any time before the bank has actual knowledge of the equities of the parties, and irrespective of renewals or the number thereof, it is a holder in due course. Hence they insist that when the account of the Construction company was overdrawn on December 31, 1923, when they were holders of the second renewal note, that they became *bona fide* holders of this note. They also insist, and this is the main and most interesting question in the case, that we should adopt the rule of "first money in, first money out," and that inasmuch as the Construction company within a few days after the note was discounted withdrew more than its balance on the date of purchase plus the amount of the note, the payee had exhausted the account in contemplation of the law, although by new deposits its account had remained substantially static, and it was, therefore, a holder in due course.

*National Bank of Commerce* v. *Armbruster,* 42 Okla. 656 (142 Pac. 393), sustains the contention of plaintiff's counsel that withdrawal of the funds before the maturity of the note was not necessary in

order to constitute plaintiff a *bona fide* holder. But this court has entertained the opposite view. Indeed, what was said when the case was here before and which made the law of the case, is to the contrary. It was there said by Chief Justice Sharpe, speaking for the court:

"If plaintiff discounted the note and credited the Lynch Construction Company's account with the proceeds, it was necessary, in view of the defense, for plaintiff to show that the Lynch Construction Company had exhausted that credit at the maturity of the note. *Central Savings Bank* v. *Stotter,* 207 Mich. 329; *Republic National Bank* v. *Bobo,* 227 Mich. 6; 3 R. C. L. p. 1055.

"It being necessary for plaintiff to show the credit had been exhausted at the maturity of the note, in order to be a *bona fide* holder for value, the question arises whether the manner in which plaintiff sought to show it was competent."

This was in consonance with the former holdings of the court. In *Drovers' National Bank* v. *Blue,* 110 Mich. 31 (64 Am. St. Rep. 327), it was held (quoting from the syllabus):

"A bank which discounts a note for a customer, crediting the proceeds thereof to his account, is not a *bona fide* purchaser for value, unless such credit was drawn upon before the maturity of the note, and before notice of facts invalidating it in the hands of the payee."

The same holding will be found in *Central Savings Bank & Trust Co.* v. *Stotter,* 207 Mich. 329, where the headnote is in the identical language used in the *Blue Case.* Unless we disregard these holdings, or unless we accept plaintiff's contention on the main question, it must be here held that when the original note matured, plaintiff was not a holder of it in due course, was not a *bona fide* purchaser,

and under the admitted facts could not recover on it. Plaintiff stood in the shoes of the payee only, and as he could not recover, neither could it. In *Anderson* v. *Engard,* 236 Mich. 221, it was held:

"It does not need the citation of authorities to demonstrate that as between the parties, as here, the same defenses are open to defendant in an action on the renewal note as would be open to him in an action brought on the original note."

Where the holder is not a *bona fide* holder, but has the rights and only the rights of the original payee, such holder is, of course, subject to this rule. It was not claimed in the court below and is not here claimed by plaintiff that the renewal notes were given or received in payment of the earlier notes. Indeed, the contrary was and is claimed. It doubtless was obvious to plaintiff's counsel, as I think it should be to us, that it ought not to be held that the renewal notes were given in payment of prior notes' and in discharge of the original obligation as concluded by Mr. Justice Sharpe, and at the same time and in the same breath to hold that they were not payment of the original notes, but that the original obligation continued unabated as concluded by the Chief Justice. Quite likely plaintiff's counsel concluded that he could not successfully urge both inconsistent positions, and it is also quite likely that he had read the opinion in *Molsons Bank* v. *Berman,* 224 Mich. 606 (35 A. L. R. 1289), and the authorities there cited. Be that as it may, he elected to urge the rule laid down by the Oklahoma court and did not urge the doctrine of payment. At some length plaintiff's counsel urge that the renewal notes were not payment, and this under the following head:

"Where a note is given merely in renewal of another note the renewal does not extinguish the orig-

inal debt or in any way change the debt except by postponing the time for payment.''

I do not think we should reverse the case on a question not urged by appellant either in the court below or here.

This brings us to the final contention of plaintiff, that we should adopt the rule of "first money in, first money out," and hold that the bank had paid value and become a holder in due course when its customer had checked out a sum equal to the balance on the date of discount plus the amount of the discounted note irrespective of the amount or state of the daily balances. Some States have adopted this rule: *Fox* v. *Bank of Kansas City,* 30 Kan. 441 (1 Pac. 789); *First National Bank* v. *McNairy,* 122 Minn. 215 (142 N. W. 139); *Bank* v. *McNair,* 114 N. C. 335 (19 S. E. 361); *First National Bank* v. *Court,* 183 Wis. 203 (197 N. W. 798); *Merchants' National Bank* v. *Santa Maria Sugar Co.,* 162 App. Div. 248 (147 N. Y. Supp. 498); *Howells State Bank* v. *Hekrdle,* 113 Neb. 561 (203 N. W. 1005). See notes, 6 A. L. R. 262, and 24 A. L. R. 901.

We have spent several days in independent research on this question. Most of the courts holding as plaintiff asks us to hold, to say the least, were obliged to modify their earlier views as embodied in their earlier decisions. The other cases in the main hark back to the Kansas case. The New York court seems to rely in part on *Fredonia National Bank* v. *Tommei,* 131 Mich. 674, as so holding. That case does not so hold, nor does it even approximate such a holding. In that case the customer had completely exhausted the credit before the maturity of the note. This made the bank a holder for value. Its status, having been fixed, did not change because the customer deposited more money to the credit of

his account. This was what was held and all that was held in that case. We shall not discuss the cases further. That work has been ably done by Chief Justice Anderson in *National Bank of Commerce* v. *Morgan,* 207 Ala. 65 (92 South. 10, 24 A. L. R. 897), in an exhaustive opinion which considers and discusses the cases, and concludes:

"While entertaining a most profound respect for the courts holding contrary to our conclusion, we think our position the more just and equitable, in view of the fact that a bank has the right to apply all unchecked-against deposits to the debts due it by the depositor. Morse on Banking, § 324; *Lehman Bros.* v. *Tallassee Co.,* 64 Ala. (567) 595; *Batson* v. *Alexander City Bank,* 179 Ala. 490 (60 South. 313). This holding cannot, therefore, be of serious detriment to banks, while a contrary view might result in furnishing a weapon to the negotiator of notes and bills against their creditors or persons having a right or equity in or against the instruments so negotiated."

Does the due administration of the law require this court to modify its former holdings, to ingraft new exceptions on rules that for decades have worked out justice to litigants at this bar? Do not the present rules on this subject afford such ample protection for all parties dealing in commercial paper as to render their change at this late day undesirable? If a bank has paid value for a discounted note by means of the withdrawal of the payee's account, it is a *bona fide* purchaser and may recover on the note freed from defenses available against the payee. If the account has not been drawn down the bank has funds in its hands belonging to the payee and indorser which it may apply to the extinguishment of the indebtedness. Under the present rules on this subject, the payee who has obtained

the discounted note by fraud or without considera-
tion is the one upon whom the loss must fall, unless
there is an actual sale with present payment. Under
the proposed rule as a practical proposition, no de-
fense can ever be successfully made upon a note
which had been discounted at a bank, and the banks
would unwittingly become clearance houses for the
holders of fraudulent paper, for paper given with-
out consideration and unenforceable between the
parties or holders not in due course. We are not
persuaded that we should accept the rule urged
upon us by plaintiff. The language of the supreme
court of Texas in *Van Winkle Gin Co.* v. *Citizens'*
*Bank*, 89 Tex. 147 (33 S. W. 862), is quite pertinent.
It was there said:

"But while the law protects the innocent holder
at the expense of the negligent but innocent ac-
ceptor, it does not permit the former to use his
vantage ground for the purpose of going beyond
his protection and wilfully inflicting on the lat-
ter a wrong in order to favor the fraudulent in-
dorser. * * *

"Whether the doctrine upon which the courts al-
low the innocent holder of commercial paper to re-
cover against the negligent but innocent acceptor
maker is based upon broad principles of public policy
intended to foster commerce, or upon the principles
of an equitable estoppel, or both, it is clear that it
extends no further than is necessary to the complete
protection of the innocent holder, and cannot be ex-
tended so as to allow such holder to pervert the
equitable principles upon which it is based for the
purpose of aiding one party to a commercial instru-
ment in obtaining an undue advantage over an-
other."

The judgment should be affirmed.

Wiest and McDonald, JJ., concurred with Fellows, J.

Fead, J. I cannot agree with Mr. Justice Fellows in his view that the law of this case was settled by the opinion of Mr. Justice Sharpe in 239 Mich. 404, and that plaintiff was not a holder in due course of the note at bar.

The issue in the former case, in connection with which the language quoted by Mr. Justice Fellows was used, was whether plaintiff had shown by competent testimony that the seller had exhausted its credit account with plaintiff before the note there and here at bar, the last renewal note, had become due. The question of the effect of failure to exhaust such credit before maturity of the original note, which is the issue here, was not there raised nor passed upon.

I am not at this time inclined to join issue with Mr. Justice Fellows upon his determination of the major questions raised by counsel, although I reserve freedom of future consideration of the rule "first money in, first money out." But I think the case calls for the application of other principles. I also wish to make it clear that in accepting counsel's concession that the two new notes at bar were renewals and were not in payment of the original, this opinion is not to be considered either as approval or disapproval of the concession.

In some respects a renewal note is a new engagement, new negotiable paper, which may be circulated, negotiated, and held in due course. *Whitney National Bank* v. *Cannon,* 52 La. Ann. 1484 (27 South. 948). The original note is ordinarily surrendered and canceled. No action can be brought

on the debt until the due date of the renewal. 3
R. C. L. p. 1218; *Price* v. *Dime Savings Bank,* 124
Ill. 317 (15 N. E. 754, 7 Am. St. Rep. 367).

On the other hand, a renewal is treated as a con-
tinuation of the original note. Renewal is not pay-
ment. *Molsons Bank* v. *Berman,* 224 Mich. 606 (35
A. L. R. 1289). Usury tainting an original note
attaches to all subsequent renewals. *Gladwin State
Bank* v. *Dow,* 212 Mich. 521 (13 A. L. R. 1233). Re-
newal notes extending back to a valid original debt
incurred prior to the date of an alleged fraudulent
conveyance by a bankrupt are enforceable. *Allen* v.
*Hillman,* 215 Mich. 312. As between the original
parties, defenses open on the original note are open
on renewals. *Anderson* v. *Engard,* 236 Mich. 221.
They are also open against a holder who had notice
of them when he took the original. *Adams* v. *Ash-
man,* 203 Pa. 536 (53 Atl. 375). A holder in due
course of the original takes the renewal as a holder
in due course, even though he has knowledge of in-
firmities when he takes the renewals. *Molsons Bank*
v. *Berman, supra; Coleman* v. *Shortsville Wheel Co.,*
257 Fed. 591.

These decisions indicate the basis of the general
rule stated in 8 C. J. p. 443:

"Where a note is given merely in renewal of an-
other note and not in payment, the renewal does not
extinguish the original debt nor in any way change
the debt except by postponing the time for pay-
ment."

See, also, 3 R. C. L. p. 1217.

In *Grace & Co.* v. *Strickland,* 188 N. C. 369 (124
S. E. 856, 35 A. L. R. 1296), plaintiff purchased the
original note after maturity, for value, and took a
renewal without notice of infirmities. It was held

not to be a holder in due course of either note. In discussing the effect of the renewal the court said:

"It means the substitution in place of one engagement of a new obligation on the same terms and conditions—that is, the re-establishment of a particular contract for another period of time."

It is evident from these authorities that the renewal of a promissory note projects the holder into the extended term of the renewal with the same rights and disabilities he acquired when he took the original note. Where the original is negotiated before its maturity, its due date has no effect upon a purchaser, but his rights and disabilities are to be determined as though, at the time he took the paper, the due date of the renewal were effectively made the due date of the original. It is the theory of renewal that the original engagement carries through its own period into the extended term, without interruption and change of status of any party to it.

The cited cases dealt with parties whose relationship to the original note and whose rights and disabilities thereunder had become definitely fixed at the time they took the instrument. The case at bar is novel in that the relationship of plaintiff was not completed but was in process of formation and subject to change of rights during the original term of the original note. It was a holder in good faith, without notice of infirmity, before maturity, had performed a well-recognized business operation of payment of value for the note, but had not become a holder in due course because such operation is not recognized in the law as payment of value until the deposit has been exhausted. The plaintiff, therefore, had done all things ordinarily necessary to become a holder in due course, and failure to complete

the status was due to neglect of the payee to draw the account. As a renewal is merely a continuation of the original obligation for a new term, it is a logical application of the principle governing renewals and of the rules which have been applied in the adjudicated cases to hold that plaintiff entered the renewal period with the same status it had during the original term, including the right of completion of the operation of becoming a holder in due course by exhaustion of the credit account. As this was done during the renewal term, plaintiff became such holder.

This rule conforms to the general usages and convenience of business, to aid which the law merchant was evolved. As this is a case of first impression, we are justified in giving weight to such considerations. In the ordinary course, most bills and notes find their way into banks and financial institutions and are paid for by deposit to the seller's account. Any other rule would leave the purchaser no recourse except to charge the note to the seller's account at maturity, as he could not afterward become, directly from such seller, a holder in due course of a renewal; the seller would be put to the task of finding another means of negotiation; the maker would be aided not at all as the note still would be subject to transfer to a holder in due course other than such first discounting purchaser; and the net result would be inconvenience to common and proper methods of business.

There was evidence that after maturity of the renewal note at bar an arrangement was made by which the Lynch Construction Company paid all of its matured obligations to plaintiff by a new note. This testimony was in conflict and presents a question for the jury.

Judgment reversed, and new trial ordered.

North, C. J., and Clark, J., concurred with Fead, J.

Sharpe, J. I am in full accord with the reasoning of Mr. Justice Fead and the conclusion reached by him.

But in my opinion there is another reason why the defense sought to be interposed is not available. The declaration in this case counted on the note of December 6, 1923, and a copy of it was attached thereto. In the notice attached to defendant's plea of the general issue defendant stated that he would insist in his defense that plaintiff purchased the note sued upon with notice that its execution was procured by fraud in the sale of the Lynch Construction Company stock to him. When examined as a witness, defendant testified:

"Each time I paid a thousand dollars on the old note I got the old note back and I saw the indorsement of the New Jersey Title Guarantee & Trust Company. My old notes were marked paid in each case. I first gave the $4,500 note due 90 days from date and on September 7, 1923, when it fell due the Lynch Construction Company, the payee, accepted $1,000 to reduce the note. They returned the notes to me canceled and marked paid. The same thing was true of the next note for $3,500 dated September 7, 1923. I didn't pay this note in full when it came due either, but paid $1,000 on December 6, 1923. They gave me back my old note which was marked paid, and I gave them a new note for $2,500, which is the note in suit here, dated December 6, 1923. I preferred to pay $1,000 and sign a note for $2,500 rather than pay the whole $3,500 which was due on the face of the note, and that is what I actually did."

It is elementary that as between the maker and payee of a note the consideration may always be inquired into. The note is but evidence of the existing indebtedness. The same rule applies to a holder who has purchased a note from the payee and at that time has knowledge of any fraud inducing its execution. But the holder, by indorsement of the payee of a negotiable note, by accepting a new note in renewal thereof and surrendering the old one, could not bring suit upon the original note which has been surrendered to the maker and was stamped "Paid." His only remedy is by action upon the note he then holds. It is the only evidence of the indebtedness of the maker and the payee to him. A new contract is thereby entered into. The consideration therefor is the surrender and cancellation of the old note, and, unless he have knowledge of the fraud entering into the consideration of the original note, the maker may not contest liability on that ground, if it appear that when the note sued upon became due there were not funds of the indorser in his hands with which to pay it. Otherwise, it would, in my opinion, be unsafe for the holder of a negotiable note by indorsement to renew it if he then had moneys of the indorser in his hands from which payment might have been made. Any other holding will, I think, result, in many cases, in loss to the holders of indorsed negotiable notes of which renewals have been had. There are cases in which it has been held in the interest of justice that the holder by indorsement may rely on the original indebtedness as evidence of the maker's liability. See *Molsons Bank* v. *Berman,* 224 Mich. 606 (35 A. L. R. 1289), and cases there cited. While these exceptions may be said to qualify the general rule, they

do not render it inapplicable under the facts here presented.

It is said that plaintiff did not upon the trial, and does not in this court, claim that payment of the original note was had by the renewals.

It is true that plaintiff's counsel discuss at length the effect of a renewal note, and insist that, if the note sued upon be so treated, it was a *bona fide* holder thereof. This, I take it, was in answer to the claim of the defendant and the ruling of the trial court relative thereto. They do say in their brief:

"The principal question in this case is: Was the plaintiff bank a holder in due course of the note sued on, that being the last of the two renewal notes?"

They also contend that plaintiff was a holder in due course under the provisions of the negotiable instruments law (2 Comp. Laws 1915, § 6093), in which no reference is made to renewals. Be that as it may, the case is before us for decision on the liability of the defendant upon the note sued upon. It was the duty of the trial court to apply the law to the facts in directing a verdict. While plaintiff's counsel are and should be bound by any concession made by them as to the facts, I do not think this court is bound by any statement made by them as to the law applicable to the facts. "A stipulation or admission by counsel as to a matter of law has, however, been held to be of no effect." 2 R. C. L. p. 990. See note in 132 Am. St. Rep. 159.

I concur in the reversal of the judgment and the granting of a new trial.

POTTER, J. This case was before this court in 239 Mich. 404, where a statement of facts may be found. Plaintiff took the original note from the payee, dis-

counted it, and gave the payee thereof credit therefor. The credit of the payee with plaintiff was not exhausted before maturity of the first or original note. Plaintiff had not paid value therefor. It is contended that after maturity of the original note plaintiff could not become a *bona fide* holder for value of any of the renewal notes, particularly of the one sued upon.

Plaintiff is a *bona fide* holder for value of the last renewal note, unless the fact the note originally discounted was not paid when due was of itself such notice to plaintiff of an infirmity therein or defense thereto as to defeat plaintiff's right to recover.

The title of the payee of the original note and all original notes was defective. 2 Comp. Laws 1915, § 6096. A promissory note does not lose negotiability after maturity. *Gardner* v. *Beacon Trust Co.,* 190 Mass. 27 (76 N. E. 455, 2 L. R. A. [N. S.] 767, 112 Am. St. Rep. 303, 5 Ann. Cas. 581); *Hawkins* v. *Wiest,* 167 Mo. App. 439 (151 S. W. 789); *Beall* v. *Russell,* 134 N. Y. Supp. 633. But in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. 2 Comp. Laws 1915, § 6099. To be a holder in due course, plaintiff must have acquired the note sued upon before it was overdue, without notice it had been previously dishonored, in good faith, and for value. 2 Comp. Laws 1915, § 6093. When defendant's original promissory note was not paid when due, it was notice to plaintiff that defendant had failed to fulfill his contract; might have a valid defense to the note; be unable to pay; was negligent in caring for his obligations promptly; that he expected to be able to renew the obligation, and perhaps of other things. It gave rise to a presumption that nonpayment was owing to some defect

or other cause which furnished to defendant a sufficient reason for not having punctually performed his obligation. *Morgan* v. *United States* 113 U. S. 476 (5 Sup. Ct. 588).

Plaintiff was not a *bona fide* holder for value of the original note before maturity, and after maturity it was subject to the same defenses as if it were not negotiable by reason of the presumption and the statute. If defendant had sufficient reason for not paying the original note at maturity, or is to be presumed to have had such sufficient reason, and this is the only basis of the rule making the note after maturity subject to the same defenses as if it were not negotiable, it was defendant's duty upon presentation of the note to him for payment to make such reason known or to refuse to recognize, pay, or renew the obligation or any part thereof.

When the original note was presented to defendant, he did not question its validity or binding obligation, but recognized them, paid a substantial sum upon the indebtedness, obtained the cancellation and surrender to him of the original note, and gave a new note for the balance due. Under such circumstances there is no room for a presumption of invalidity arising from defendant's nonpayment of the original note.

Plaintiff took the first and second renewal notes, just as it took the original note before maturity, subject to any defenses of which it had notice. It would be anomalous, to say the least, to hold that from the mere fact the original note was not paid in full when due, plaintiff is charged with knowledge or notice of all its latent infirmities, of which neither it nor defendant had any actual knowledge or notice. If, from the fact alone of nonpayment in full at maturity, plaintiff is to be charged with knowledge

or notice of such mutually unknown latent infirmities, defendant is and should be charged with like knowledge or notice. If defendant is chargeable with such knowledge or notice, for this or any other reason, his subsequent renewals of the unpaid part of the obligation is a waiver of such infirmities in the original obligation as defendant might, in the exercise of reasonable and ordinary diligence, have ascertained. *Padgett* v. *Lewis,* 54 Fla. 177 (45 South. 29); *Hyer* v. *York Manfg. Co.,* 58 Fla. 283 (50 South. 485); *Franklin Phosphate Co.* v. *International Harvester Co.,* 62 Fla. 185 (57 South. 206, Ann. Cas. 1913 C, 1247); *Roess Lbr. Co.* v. *State Exchange Bank,* 68 Fla. 324 (67 South. 188, L. R. A. 1918 E, 297, Ann. Cas. 1916 B, 327); *Stewart* v. *Simon,* 111 Ark. 358 (163 S. W. 1135, Ann. Cas. 1916 A, 825); *Sheffield* v. *International Harvester Co.,* 3 Ga. App. 374 (59 S. E. 1113). This is consistent with *Gladwin Bank* v. *Dow,* 212 Mich. 521 (13 A. L. R. 1233), and *Allen* v. *Hillman,* 215 Mich. 312, which did not involve the question in controversy here, and with *Molsons Bank* v. *Berman,* 224 Mich. 606 (35 A. L. R. 1289), which holds that a *bona fide* holder for value of negotiable paper may accept payment in part and a renewal of the balance, with such notice, without ceasing to be a *bona fide* holder for value.

An obligation is renewed when the same obligation is carried forward by a new paper or undertaking whatever it may be. What makes the renewal is the extension of time in which to discharge the obligation. *Lowry National Bank* v. *Fickett,* 122 Ga. 489 (50 S. E. 396).

"It means to re-establish a particular contract for another period of time." *Kedey* v. *Petty,* 153 Ind. 179 (54 N. E. 798).

Under the facts, the renewal notes advanced the due date of the unpaid balance of the original obligation. Neither plaintiff nor defendant, by the mere fact of nonpayment in full of the original obligation at maturity, is charged with knowledge or notice of the latent infirmities in such obligation mutually unknown and unsuspected by the parties. Plaintiff having, in good faith paid value for the last renewal note before maturity, without knowledge or notice. of any infirmity therein or defense thereto, must be held to be a holder in due course and entitled to recover. Judgment should be reversed, with costs to plaintiff.