UNION BANK & TRUST CO. *v.* PINE RIDGE COAL CO.

1. BILLS AND NOTES—ACCEPTOR OF TRADE ACCEPTANCES LIABLE AS PRINCIPAL.

Under negotiable instruments law (2 Comp. Laws 1929, § 9311), acceptor of bill of exchange is no longer secondarily liable thereon, but by his acceptance he becomes principal debtor precisely like maker of note.

2. SAME—TRADE ACCEPTANCES—LIABILITY OF ACCOMMODATION ACCEPTOR TO HOLDER FOR VALUE.

That party discounting trade acceptances understood that they were to be paid out of coal to be delivered to third party and that acceptance was in nature of accommodation, does not relieve acceptor of liability to holder for value (2 Comp. Laws 1929, § 9278).

3. SAME—LIABILITY OF ACCEPTOR NOT AFFECTED BY RENEWALS.

Liability of acceptor of trade acceptances is in no way affected by fact that acceptances sued on were renewals.

Error to Wayne; Doty (Frank L.), J., presiding. Submitted June 11, 1931. (Docket No. 58, Calendar No. 35,538.) Decided October 5, 1931.

Assumpsit by Union Bank & Trust Company, a West Virginia corporation, against Pine Ridge Coal Company, a Michigan corporation, on trade acceptances. Judgment for defendant. Plaintiff brings error. Reversed, and judgment ordered entered for plaintiff.

*Carey, Armstrong, Weadock & Essery,* for plaintiff.

*Havelock J. Northmore (Lightner, Oxtoby, Hanley, Crawford & Dodd,* of counsel), for defendant.

On acceptor of bill of exchange as principal debtor, see annotation in 1 L. R. A. 649.

Sharpe, J. The plaintiff is a State bank, located at Huntington, in West Virginia. The defendant is a Michigan corporation, engaged in the business of buying and selling coal. On January 25, 1926, the defendant entered into a contract with the Buffalo Thacker Coal Company, a West Virginia corporation, engaged in the mining of coal in that State, under which the defendant secured the exclusive sales agency of that company's output at a commission of 8 per cent. of the selling price thereof. On June 12th of that year, A. D. Cronin, the president of the defendant company, was in Huntington and called upon L. R. Reese, the president of the Buffalo Thacker Coal Company. The Buffalo company was at that time indebted to the defendant in the sum of about $70,000 for advances made to it in cash and trade acceptances. It was then also indebted to the plaintiff bank in the sum of $9,000 on a note long since past due, on which Robert L. Archer, the president of the bank, was an indorser.

Mr. Reese at that time told Mr. Cronin that he had an opportunity to secure an order for 100 cars of coal from the West Virginia Coal Company and asked Mr. Cronin to make an advance therefor; that for want of ready money he was unable to operate the company's mines. After some discussion, Cronin consented to sign trade acceptances for $6,500, if Reese could get them discounted. Reese thereupon telephoned Archer, plaintiff's president, and secured his promise to discount the acceptances. They were prepared, one for $3,500 and the other for $3,000, payable in 30 days, and signed by Reese and Cronin as presidents of their respective companies. Archer personally discounted the acceptances, giving Cronin his check on plaintiff bank for $6,400, which was duly paid. He afterwards turned

them in to the plaintiff bank, receiving credit for $6,450 therefor. These acceptances were renewed on July 12, 1926, for 30 days. This action is brought to recover the amounts thereof. The case was tried before the court without a jury. He filed findings of fact and conclusions of law, and entered a judgment for defendant, of which plaintiff seeks review by writ of error.

The conclusion reached by the trial court was thus stated:

"1. Plaintiff bank was not a *bona fide* holder for value of these acceptances because Mr. Archer, president of the bank, was not a holder for value and assigned the acceptances to the plaintiff bank under circumstances precluding the plaintiff from being a *bona fide* holder for value. * * *

"2. The defendant was an accommodation acceptor and the party primarily liable on the acceptances was the Buffalo Thacker Coal Company, and the bank, not being a holder for value, cannot recover."

The applicable provisions of our negotiable instruments law (2 Comp. Laws 1929, § 9248 *et seq.*) will be referred to by sections. Section 64 (2 Comp. Laws 1929, § 9311) provides:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance."

Under this provision the acceptor of a bill of exchange is no longer to be considered as secondarily liable thereon. By his acceptance he becomes the principal debtor precisely like the maker of a note. 3 R. C. L. p. 1144.

In their brief, counsel for defendant say:

"In view of the decision of the court, we must assume that the trial judge believed the testimony of

Mr. Cronin wherein Mr. Cronin testified that before signing and delivering the trade acceptances, he informed Mr. Archer that the acceptances were only to be paid out of the proceeds of the sale of coal to the West Virginia Coal Company, and particularly that he told Mr. Archer that his company, the Pine Ridge Coal Company, would not pay the acceptances. Mr. Archer admits that he knew the trade acceptances were not drawn against any merchandise sold to the acceptor, notwithstanding the fact that the instruments bore upon their face 'the obligation of the acceptor hereof arises out of the purchase of goods from the drawer.' ''

The record warrants the conclusion that it was understood between the parties at the time the acceptances were prepared and delivered to Archer that they were to be paid out of the coal to be delivered to the West Virginia company, but this fact in itself does not relieve the defendant of liability. Neither Archer nor the bank were in any position to compel payment from that source. Under defendant's contract with the Buffalo company it had the exclusive right to make sales of all coal mined by that company. The trial court found that after the Buffalo company resumed operation of its mines it "sent coal to the defendant company over a considerable period of time and until the complete obligations owing from the Buffalo Thacker Coal Company to the defendant were taken care of with the exception of the amount of $6,500 as represented by said acceptances."

Before these shipments were made, the defendant, in a "night letter" sent to the Buffalo company on June 24th, complained that none had been made, and stated that unless it received "shipping notices" it would "repudiate trade acceptance advising Archer

of same.'' In a letter written to that company on July 6th, inclosing the renewal acceptances, defendant stated that the originals were given to get the mine started, and that ''the money derived from this 100 cars was to come to us, so that we could take care of our trade acceptance.''

The original acceptances do not appear in the record, but it is a significant fact that the renewals were accepted, payable at the First National Bank in Detroit. Mr. Reese testified:

''I didn't apply the money that was coming into the Buffalo Thacker Coal Company as the result of coal sales to the liquidation of these trade acceptances because Cronin told me to pay the old debt first.''

We find nothing in the record to even indicate an agreement or understanding that either Archer or the plaintiff were to have any control over the proceeds of the shipments of coal to the West Virginia company.

That Archer knew that defendant's acceptance was in the nature of an accommodation to the Buffalo company in no way affects defendant's liability. Section 31 (2 Comp. Laws 1929, § 9278) of the act above referred to reads:

''An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.''

It clearly appears, as before stated, that plaintiff gave value for the acceptances. In *Irwin* v. *Wolcott,*

183 Mich. 92, 98, wherein a somewhat similar question was presented, it was said:

"The agreement authorized the discount of the note, and the fact that it was known to the cashier of the bank that the paper had been drawn for accommodation would not prevent the bank which discounted it for value, by giving credit to the company for the amount of the discount upon its account, from recovering thereon."

The defense must rest upon the claim of Mr. Cronin that it was agreed between him and Mr. Archer that the defendant should not be liable thereon. He testified:

"I was talking to Mr. Archer, personally, right at the elevator, and it was agreed at that time that the West Virginia Coal Company would pay these trade acceptances."

It is difficult to understand how such an agreement could have been made when that coal company was in no way a party to the arrangement then being made. Mr. Archer as a witness denied that he had any conversation with Mr. Cronin relative to the payment of the acceptances. He testified that Mr. Reese asked if he would discount them, and he agreed to do so and afterwards did so.

These acceptances were signed by Mr. Cronin on June 12, 1926. He testified as a witness on December 2, 1930. One's memory of an occurrence after such a lapse of time is apt to be faulty. Subsequent events, about which there is no dispute, satisfy us that he was mistaken in saying that he told Archer that his company would not pay the acceptances. That it was expected that payment would be made out of the coal to be mined by the Buffalo company and shipped to the West Virginia company is appar-

ent.  Large shipments were so made, and defendant received out of the proceeds thereof a sufficient sum to reimburse it for the moneys theretofore advanced to the Buffalo company and the amount of its other trade acceptances.

The liability of the defendant is in no way affected by the fact that the acceptances on which the action is based were renewals.  *New Jersey Title G. & T. Co.* v. *McGrath,* 246 Mich. 553.

The conclusion reached renders it unnecessary to pass upon the admissibility of the evidence of the contemporaneous parol agreement varying the terms of the acceptances.

The judgment is reversed and set aside, with costs to appellant, and the cause remanded, with directions to enter a judgment for the plaintiff for the amount of the acceptances and interest thereon to the date of such judgment.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.