Uta HEIDE, Plaintiff,

v.

HUNTER HAMILTON LIMITED PARTNERSHIP, Spyros St. Kontos, and J.D.H. Management, Inc. II, jointly and severally, Defendants.

No. 92–CV–77273.

United States District Court, E.D. Michigan, S.D.

June 25, 1993.

---

Gregory L. Curtner, Steven A. Roach, Miller, Canfield, Paddock & Stone, Detroit, MI, for Uta Heide.

Patrick A. Karbowski, Butzel Long, Birmingham, MI, for J.D.H. Management.

Basil T. Simon, Peter N. Zingas, Simon, Korachis & Stella, P.C., Detroit, MI, for Hunter Hamilton/Spyros St. Kontos.

## OPINION AND ORDER

FEIKENS, District Judge.

### Introduction

Plaintiff Uta Heide ("Heide") moves for summary judgment pursuant to Fed.R.Civ.P. 56(a). Plaintiff filed this case to enforce the terms of a promissory note executed by defendant Hunter Hamilton Limited Partnership ("Hunter Hamilton") through its general partners, defendant Spyros St. Kontos ("Kontos") and defendant J.D.H. Management, Inc. II ("J.D.H."). All defendants have admitted execution of the promissory note on May 10, 1991 in answer to the Complaint.

Defendant Kontos executed a guaranty of payment of the promissory note. Plaintiff also seeks to enforce the terms of this guaranty of payment signed by Kontos. In his answer to the Complaint, Kontos admits execution of the guaranty.

Pursuant to the terms of the Note and the Guaranty, plaintiff sent to all defendants a cure notice dated September 23, 1992. Defendant Hunter Hamilton failed to make the payments required under the note and failed to cure after receiving notice of same.

The parties have submitted briefs, and oral arguments have been heard. For the reasons set forth below, pursuant to Fed. R.Civ.P. 56(d), I grant partial summary judgment in plaintiff's favor. Specifically, I grant judgment against all three defendants in the principal amount of $150,000. Because there appear to be questions of material fact, I decline to grant summary judgment to plaintiff with regard to interest charged prior to the May 10, 1991 Note, and I decline to grant summary judgment to plaintiff with regard to the 12% interest charged in the May 10, 1991 Note. I deny plaintiff's request for costs and attorney fees.

### Background

On July 27, 1989 and September 8, 1989, plaintiff loaned to defendant Kontos $50,000 and $100,000 respectively. In consideration of the loans made to him, Kontos executed two promissory notes in favor of plaintiff; each note was dated the same day of each transaction. These promissory notes called for repayment of the loan principal together with interest at a rate of 12% on or before twelve months from the date of execution.

As a result of Kontos' inability to repay the principal on accrued interest amounts due under the July 27 and September 8, 1989 promissory notes on or before their respective due dates, Kontos executed two additional promissory notes on October 12, 1990. These October 12, 1990 Notes, with an interest rate of 12%, were intended to replace the July 27 and September 8, 1989 Notes and to allow Kontos six additional months in which

to repay the outstanding principal and accrued interest.

As a result of Kontos' inability to repay the principal and accrued interest on or before the due date in the October 12, 1990 Notes, and as a result of plaintiff's request for additional collateral and security prior to any further extensions of time, the parties entered into an additional promissory note and guaranty of payment on May 10, 1991. The May 10, 1991 promissory note was executed by Kontos in his capacity as general partner of defendant Hunter Hamilton. The May 10, 1991 Note was also executed by defendant J.D.H. in its capacity as general partner of Hunter Hamilton. The May 10, 1991 Note called for a principal loan amount of $182,-360.06 with an interest rate of 12%. This amount consisted of the combined principal amounts of $50,000 and $100,000 plus accrued interest at a 12% rate in the amount of $32,260.06. The accrued interest amount was carried over from the previous promissory notes. In addition to this promissory note, Kontos executed a guaranty of payment in his individual capacity guaranteeing both the principal and interest amount set forth in the promissory note of May 10, 1991.

To date, Kontos has made payments of approximately $21,968.

### Analysis

I. Usury

A. *Previous Notes*

■ Defendants argue that the Notes executed prior to May 10, 1991 were usurious. Defendants argue that the monies referred to in the May 10, 1991 documents upon which plaintiff bases her claim consist of amounts carried over from prior related usurious transactions; as a result, say defendants, the transactions upon which plaintiff now attempts to collect are tainted with usury.

Specifically, the 1989 and 1990 notes set interest at a rate of 12% which, under the circumstances, is usurious unless the money loaned was "an extension of credit to a business entity." M.C.L. § 438.61(3). Defendant Kontos has stated in a June 15, 1993

affidavit that the 1989 loan he received from plaintiff was personal to him and used by him to discharge his personal obligations. Kontos declares that as a result of his longstanding personal relationship with plaintiff, she agreed to loan him the money in his individual capacity and personal to him. Kontos states that plaintiff dictated the terms of the promissory notes, including the 12% rate of interest. Thus, defendants argue, the rate of 12% in the 1989 Notes is usurious since it was loaned to an individual for non-business reasons.[1] The same argument applies, contend defendants, to the 1990 Notes.

Contrarily, plaintiff Heide states in her May 12, 1993 affidavit that she understood Kontos would use the funds in pursuit of his real estate business; she would not have loaned the money to him for personal purposes. She says she and Kontos never discussed an interest rate in 1989; the interest rate of 12% on the 1989 Note was entirely his idea. She says she relied completely on Kontos, a long-time friend, to prepare an enforceable promissory note.

Accordingly, there is a genuine issue of material fact as to whether the interest rates in the 1989 and 1990 Notes are usurious. As stated above, the amount of $182,360.06 in the May 10, 1991 Note consisted of the combined principal amounts of $50,000 and $100,-000, plus previously accrued interest at 12% in the amount of $32,260.06. Thus, because there is a genuine question of material fact as to whether the 12% interest rate in the previous Notes is usurious, I can not grant plaintiff's motion for summary judgment which includes this $32,260.06 amount.

B. *Interest on May 10, 1991 Note*

As stated above, the interest rate charged by plaintiff on the May 10, 1991 Note is 12%. Because this amount is greater than 7%, it is not usurious if there was "an extension of credit to a business entity". M.C.L. §§ 438.-61(3), 438.31. Plaintiff argues there was an extension of credit to a business entity because the principal obligor under the May 10, 1991 Note is a partnership. However, it

---

1. Generally speaking, if it was a loan to an individual for non-business reasons then the maxi-

mum rate of interest could not exceed 7% per annum. M.C.L. § 438.31.

appears that plaintiff did not loan defendants any new money at the time the May 10, 1991 note was executed. It appears that the only times plaintiff loaned money to any party was on July 27, 1989, and September 8, 1989, when plaintiff loaned defendant Kontos $50,-000.00 and $100,000.00, respectively. As explained above, in his June 15, 1993 affidavit, Kontos says he used the funds borrowed from plaintiff for personal obligations and finances. Heide states in her May 12, 1993 affidavit that she understood Kontos would use the funds in pursuit of his real estate business; she would not have loaned the money to him for personal purposes.

Thus, as with the previous Notes, there appear to be questions of material fact as to whether there was an extension of credit to a business, and hence whether the interest rate in the May 10, 1991 Note is usurious. Accordingly, I can not grant plaintiff summary judgment on the 12% interest rate contained in the May 10, 1991 Note.

### C. *Principal*

■ Nevertheless, the majority of the amount of the May 10, 1991 Note—$150,-000.00—consisted of previous principal amounts loaned to Kontos by plaintiff. Assuming that the interest rates in the 1989 and 1990 notes were usurious, the issue then becomes: does the taint of usury prevent plaintiff from recovering on the principal amount of the May 10, 1991 Note (*i.e.*, the $150,000.00)? This is a question of law which is ripe for decision on this motion for summary judgment. As explained below, I hold that the taint of usury only prevents plaintiff from recovering any interest; the taint of usury does not prevent plaintiff from recovering the principal amount due her. In other words, even if the May 10, 1991 Note is usurious, Michigan case law has long held that defendants' sole remedy would be an abatement of the usurious interest included in the May 10, 1991 Note. Defendants are not entitled to escape the entire obligation evidenced by the May 1991 Note.

In *Smith v. Stoddard,* 10 Mich. 148, 151 (1862), a foreclosure action, the plaintiff made a series of loans to defendants at usurious interest rates. Subsequently, the parties settled the loans when defendants granted plaintiff a mortgage in real estate and the parties agreed upon a set amount due under the mortgage. As a defense to the foreclosure action, defendants contended that the last mortgage note was usurious because of the usury contained in the prior notes. The court noted that typically a note which renews a prior loan with usurious interest should be abated to the extent of the usurious interest:

> A new security, between the same parties, embracing not only a valid debt, but also a claim for *unpaid* usurious interest, would undoubtedly be founded to that extent on a usurious consideration, and therefore liable to abatement. But the abatement cannot, we think, under our statute, go further. The law does not absolutely avoid contracts for usury, and if parties completely perform them they are remediless.

*Id.* at 151 (emphasis in original).

Further, the court in *Gardner v. Matteson,* 38 Mich. 200, 203 (1878), said: "It was there held [in *Smith v. Stoddard* ] that where in a new security a sum is included for unlawful unpaid interest, the security to the extent of such unlawful interest is without consideration, and therefore liable to abatement to that extent."

Nonetheless, defendants insist that because a portion of the total amount of the May 10, 1991 Note contains accrued interest due from previous allegedly usurious notes, defendants are not obligated to pay any amount in the May 10, 1991 Note.

Defendants cite *Union Guardian Trust Co. v. Crawford,* 270 Mich. 207, 258 N.W. 248 (1935), for the proposition that a prior usurious transaction can taint subsequent transactions, regardless of changes in parties, documents, and security; the taint of usury can only be expunged by the parties knowingly and consensually entering into a new and independent agreement.

In *Union Guardian Trust Co.* plaintiff trust company and defendant borrower entered into a loan transaction in which the defendant borrowed $25,000 from the trust company. As security for the loan, the defendant, among other things, executed a $12,-

000 mortgage on real estate and also assigned certain land contracts and other securities to the bank. Thus, $12,000 of the $25,000 loan was secured by a mortgage on real estate while the other $13,000 was secured by other securities and land contracts. Eventually, the parties substituted new securities for the security supporting $8,000 of the loan by the defendant giving the trust company two mortgages each in the amount of $4,000 in place of the other securities. The defendant claimed the transaction was usurious. The court stated:

> It seems to be the rule that the general principle determining when an indebtedness infected with usury is to be deemed disinfected that if the tainted obligation is, with full knowledge and consent of the borrower finally cancelled or abandoned, and a new obligation, containing no part of the usury is executed in legal form, and supported solely by the moral obligation resting upon the borrower to pay the money actually received with legal interest thereon, such new obligation is valid and enforceable. But so long as the original usurious obligation continues to exist, based upon a consideration in which usury adheres, the taint of usury persists whatever be the form which the subsequent dealings of the parties may cause it to assume, and even though new parties may have been introduced, or the borrower allowed to assume a different relation to the security affected with usury.

*Id.* at 211, 258 N.W. 248 (citations omitted).

The court held that the original usurious transaction was not purged by substituting the two $4,000 mortgages for the original $8,000 obligation which had originally been secured by other collateral. The court reasoned that this transaction constituted "no independent or different contract ... which, under the authorities would purge the original contract of usury." *Id.* at 212, 258 N.W. 248.

Defendants also claim *Mathews v. Tripp*, 285 Mich. 705, 281 N.W. 412 (1938), supports their proposition. In *Mathews*, the bank loaned defendant borrowers $1,500 secured by a mortgage on real estate. The bank eventually sold and assigned the note and mortgage to the plaintiff. The court held the original loan transaction between the bank and defendant usurious. Plaintiff argued that the taint of usury was waived when defendant "voluntarily entered into an agreement with the assignees of the mortgage as to the balance then due on the mortgage, at which time no question of usury was raised." *Id.* at 709, 281 N.W. 412. The court said:

> If a transaction is usurious in its inception, it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendent obligations, however remote, can be free of the taint if the descent can be fairly traced.

*Id.* at 710, 281 N.W. 412.

> The court in *Mathews* also said:

> Where a bargain is usurious, an agreement in renewal thereof, of in substitution therefor, which provides for a payment that includes the usurious interest is also illegal, although no excessive interest is promised from the date of the renewal or substitution.

*Id.* at 710, 281 N.W. 412.

Further, *Gladwin State Bank v. Dow*, 212 Mich. 521, 553, 180 N.W. 601 (1920) quoted *Smith v. Stoddard*, 10 Mich. 148, 150 (1862), for the proposition that:

> When parties have actually paid the usurious interest, and then come to a *bona fide* settlement, and make new securities which include nothing but an actual loan, and are not meant as mere evasions, we do not think the new contract can be regarded as either usurious in itself, or based on a usurious consideration.

Defendants interpret *Gladwin* as saying that a new transaction is free of the taint of usury if the parties completely settle the original transaction and enter into a new transaction which includes an actual loan. Defendants claim that Heide never cancelled or abandoned the original 1989 usurious transaction. Further, they say that the May

10, 1991 Note is not a settlement between the parties of all former transactions; thus they say the note is usurious.

However, even if the May 10, 1991 transaction contains the taint of usury from previous transactions, the cases cited by defendants still do not say that the entire May 10, 1991 transaction is invalid, thereby freeing defendants from paying any money owed to plaintiff. Indeed, *Union Guardian Trust* itself stated: "Under our statute the entire *interest* is forfeited in usurious contracts and the courts apply all payments of interest, though made as such, upon the principal debt." *Union Guardian Trust Co.*, 270 Mich. at 211, 258 N.W. 248 (emphasis added).

Further, the relevant statutes involved in *Mathews* directly support this view. 2 Comp.Laws 1929, § 9240 (Stat.Ann. § 19.12) provided in relevant part: "if it shall appear that a greater rate of interest has been, directly or indirectly, reserved, taken, or received, than is allowed by law, the defendant shall not be compelled to pay any *interest* thereon." (emphasis added). 2 Comp.Laws 1929, § 9241 (Stat.Ann. § 19.13) also provided:

> Whenever it shall satisfactorily appear by the admission of the defendant, or by proof that any bond, bill, note, assurance, pledge, conveyance, contract, security, or any evidence of debt has been taken or received in violation of this act, the court shall declare the *interest* thereon to be void.

(emphasis added).

Thus, defendants have failed to show that the alleged existence of a usurious interest rate in a note or guaranty means that a borrower is relieved from paying the principal owed. The cases cited by defendants themselves make clear that if a usurious rate was involved in the transaction at issue in this case, then the defendants are only relieved of paying the interest.

Currently, M.C.L. § 438.32 says in relevant part: "Any ... lender ... who ... charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs."

Thus, even with a usurious interest rate, defendants are still entitled to pay the amount loaned to them by plaintiff.

It would be unjust for a court to say that even though party A loaned money to party B, party B does not have to repay the loan to party A solely because an illegal interest rate was charged by party A. The court would be turning a loan transaction into a gift transaction. As the above authorities make clear, party A's punishment for charging an excessive interest rate is that it forfeits the interest charged to the borrower; party A does not forfeit the entire amount of money it loaned to the borrower.

## II. J.D.H.

█ Regardless if partial summary judgment is entered against the other defendants, defendant J.D.H. argues that partial summary judgment should not be entered against it. J.D.H. argues the May 10, 1991 Note is unenforceable against it for two reasons independent of the usury argument. First, it argues the May 10, 1991 Note lacks consideration as to J.D.H. if the money loaned was used, as defendant Kontos asserts in his June 15, 1993 affidavit, to discharge Kontos' personal debts and not for the construction of the Hunter Hamilton Building (which is real estate owned by both Kontos and J.D.H.).

Further, J.D.H. argues the May 10, 1991 Note was obtained by fraudulent misrepresentation if plaintiff knew at the time she induced J.D.H.'s execution of the Note that the money she loaned to Kontos had already been used to discharge his personal debts and not used toward the construction project. According to J.D.H., Kontos obtained J.D.H.'s execution of the promissory note at plaintiff's behest; Kontos was acting as plaintiff's agent in obtaining J.D.H.'s execution of the promissory note.

Specifically, the president of J.D.H., Jack Hamburger, says in his June 15, 1993 affidavit that when he signed the May 10, 1991 promissory note in his capacity as president of J.D.H., he believed the loan was being used to help finance the construction of the Hunter Hamilton Building. In other words, J.D.H. argues in its June 15, 1993 supple-

mental brief that Kontos obtained J.D.H.'s execution of the note based on the representation that the money was used for the parties' real estate business when, in reality, the money had already been spent on Kontos' personal obligations.

However, Jack Hamburger ("Hamburger") does not explicitly say that he believed that the money from plaintiff was being used for the Hunter Hamilton Building based on anything said by Kontos. All Hamburger says in his affidavit on this particular point is that:

> Kontos represented that Heide loaned him money and wanted a promissory note evidencing the loan executed by Hunter Hamilton Limited Partnership and its general partner, J.D.H. . . . . When I signed the note, I believed the loan was being used to help finance the construction of the Hunter Hamilton Building.

Presumably, if Hamburger based this belief on a representation made by someone, particularly Kontos, he would have stated such a crucial fact in his affidavit. The absence of such a crucial statement makes one wonder if Hamburger merely assumed the money from plaintiff was going towards the financing of the Hunter Hamilton Building.

Nonetheless, further statements of Hamburger or anyone else are not needed to dispose of this matter.

In Kontos' June 15, 1993 affidavit he says:

> That as an indication that the true nature of the May 10, 1991 Promissory Notes was merely a pledge by me of amounts due to me from Hunter Hamilton Limited Partnership, entries were made in the books and records of Hunter Hamilton Limited Partnership to reflect my directing of the monies owed to me to Uta Heide. (Refer to financial statements of Hunter Hamilton Limited Partnership reflecting designation of construction accounts payable previously owed to Spyros St. Kontos to Uta Heide).

Exhibit B to Kontos' and Hunter Hamilton's June 15, 1993 supplemental brief is the balance sheet of Hunter Hamilton Limited Partnership for the years 1990 and 1991. The balance sheet as of December 31, 1990

states that Hunter Hamilton had a construction related account payable of $736,829.00.

The balance sheet of Hunter Hamilton as of December 31, 1991 states there is a note payable of $182,360.00. An asterisk at the bottom of the sheet says the note payable "Reflects $182,360 of previous construction accounts payable owed to Spyros St. Kontos which were pledged to Uta Heide. This entry was made during the 1991 calendar year."

Further, the May 10, 1991 Note itself says that: "For value received, and in recognition of advances *made by Spyros Kontos* to and for the benefit *of the undersigned* which have been used for the development and construction of the improved real estate of the undersigned, the undersigned promises to pay to the order of Uta Heide . . . the principal sum of . . . [$]182,360.06." (emphasis added). The undersigned are Hunter Hamilton's general partners: Kontos and J.D.H. Thus, by signing the May 10, 1991 Note, J.D.H. admitted that it was promising to pay the amount Kontos owed to plaintiff because Kontos had made advances to J.D.H. for the improvement of real estate owned by Kontos and J.D.H.

Based on the revelations in Kontos' affidavit and the balance sheets of Hunter Hamilton, the court concludes as a matter of law that Hunter Hamilton (through its general partners Kontos and J.D.H.) agreed to pay the amount Kontos owed Heide because Hunter Hamilton owed at least the same amount to Kontos. As a general partner of Hunter Hamilton, J.D.H., through its president Jack Hamburger, signed the 1991 Note at issue. Thus, because J.D.H. owed money to Kontos, who owed money to Heide, J.D.H. had consideration to sign the note pledging to pay the money Kontos owed to Heide. Whether J.D.H. knew the loan from Heide to Kontos was going to be used by Kontos exclusively for his own personal purposes, and whether Kontos told Hamburger the money was going to be used for the Hunter Hamilton Building, are simply immaterial to the question of whether J.D.H. is obligated on the principal amount of $150,000. It does

not matter what Kontos did or said to Hamburger to persuade him to sign the note obligating J.D.H. to pay funds to Heide because J.D.H., as a general partner of Hunter Hamilton, already owed money to Kontos, who already owed money to Heide.[2]

## Conclusion

In sum, as a matter of law, all three defendants are obligated to pay plaintiff the sum of $150,000.[3] Because there appear to be questions of material fact as to whether a usurious rate of interest existed on any of the notes existing between the parties, I can not say as a matter of law what interest plaintiff is entitled to, if any.

IT IS SO ORDERED.

2. In plaintiff's June 21, 1993 reply brief, plaintiff appears to argue that because the sums due under the May 10, 1991 Note replaced sums due directly to Kontos for construction related payables, plaintiff did in fact loan money to Hunter Hamilton. As the text of this opinion makes clear, I agree that the sums due under the May 10, 1991 Note replace sums due directly to Kontos for construction related payables, but it does not follow as a matter of law that plaintiff loaned money to Hunter Hamilton. If, for example, Kontos used the money he borrowed from Heide to finance construction-related projects to which Hunter Hamilton was a party, then arguably one could say plaintiff loaned money to Hunter Hamilton. There is conflicting evidence, though, on whether Heide loaned money to Kontos, who then loaned that same money to Hunter Hamilton. As explained in the text, Kontos' affidavit explicitly says he used the money Heide loaned him for personal purposes.

Hunter Hamilton's balance sheets together with Kontos' affidavit show that Hunter Hamilton owed Kontos a sum of money. Instead of paying some of the money owed to Kontos, Hunter Hamilton agreed to pay plaintiff the money Kontos owed her. There is no indisputable evidence which would allow me to say as a matter of law. that plaintiff loaned money to Hunter Hamilton for business purposes. Indeed, there is no indication on Hunter Hamilton's balance sheets of an increase in assets due to a loan from plaintiff. Thus, as I stated in a previous section in the text, I can not grant summary judgment to plaintiff on the 12% interest charged in the May 1991 Note.

3. A hearing will have to be held to determine if the amount of $21,968 already paid by Kontos to plaintiff was a payment of principal or a payment of interest. If this amount was a payment of principal, then defendants will be entitled to credit $21,968 to the amount of $150,000 which I now hold defendants must pay plaintiff. If this amount of $21,968 was a payment of interest, then the defendants' defense of usury may have been waived. If it was a payment of interest, then defendants will be required to pay the full principal amount of $150,000, and defendants will, most likely, have to pay interest to plaintiff as well.